664 So.2d 995 (1995)
Deborah Kay BOYT, Appellant/Cross-Appellee,
v.
Randall N. ROMANOW, Appellee/Cross-Appellant.
Nos. 94-03190, 94-03191.
District Court of Appeal of Florida, Second District.
October 11, 1995.
*996 Michael L. Hastings of Hastings and Estreicher, P.A., St. Petersburg, and Ernest P. Jenkins of Jenkins, Walter & Kaiser, P.A., St. Petersburg, for Appellant/Cross-Appellee.
Wayne O. Smith, St. Petersburg, and Jane H. Grossman of Law Offices of Jane H. Grossman, St. Petersburg, for Appellee/Cross-Appellant.
PATTERSON, Judge.
In this paternity action, the appellant/mother challenges the form and substance of the trial court's child support award. The appellee/father cross-appeals the amount of support awarded. We approve the trial court's creation of a trust for the child's "good fortune" support award; however, we reverse and remand for further proceedings on the procedure to implement the trust.
This case involves what has come to be known as "good fortune" child support  that amount of support which is the difference between the child support guidelines amount and the amount of support which the court has determined necessary to meet the child's needs. See Miller v. Schou, 616 So.2d 436 (Fla. 1993); Smith v. Smith, 474 So.2d 1212 (Fla. 2d DCA 1985), review denied, 486 So.2d 597 (Fla. 1986). The concept contemplates the child obtaining benefit from the affluence of the noncustodial support-paying parent.
The father did not contest paternity. Thus, the only issue is the amount of support he is required to pay. Using the schedule mandated by the child support guidelines in section 61.30, Florida Statutes (1993), the trial court determined the father's support obligation to be $2,654.09 per month. This total consists of the base maximum scheduled amount of $1,432, plus 5% of the father's monthly income in excess of $10,000, plus a contribution to child care and medical insurance. At the time of trial, the child was three years old and had no disabilities. The court determined that $1,500 was reasonable *997 and necessary to meet the child's needs, leaving a monthly balance of $1,154 as excess or "good fortune" support. In the final judgment, the court found, "It is difficult for the court to ignore the fact that it appears a considerable part of child support monies will be devoted to the mother's charge card obligations or real and personal property purchases and luxuries." Having apparently determined that the amount of support was not "unjust or inappropriate," the court ordered that $1,500 per month would be paid to the mother through the central government depository and that the remaining $1,154.09 was the "independent resource of the minor child," which would be maintained in a separate trust account. To this end, the court appointed an independent lawyer as the child's guardian ad litem under the authority of section 61.401, Florida Statutes (1993). The mother challenges this procedure, asserting that the trial court was without authority to deprive her of the use of the entire amount of child support under the guidelines. Although the court indicated that it would enter an additional order detailing the duties of the guardian ad litem in regard to this fund, the trial court had not entered such an order at the time of oral argument.

THE CHILD SUPPORT GUIDELINES
The child support guidelines are not "guidelines" in the true sense. Chapter 61.30, Florida Statutes (1993), is a mandatory schedule of support designed to meet the minimum needs of a child in relation to the parents' income level. The calculation is based on the parents' combined monthly income. In the case of a combined monthly income of $1,000, the schedule provides a child support allocation of $235 for one child. In the case of a combined monthly income of $10,000, the allocation is $1,437.00. Assuming that $235 is sufficient to cover the bare necessities of a child, the amount of $1,437 must therefore include a factor of "good fortune" support which is built into the guidelines formula. A trial court may therefore determine the amount of "good fortune" support in an individual case by simply comparing the child's actual needs as shown by the evidence to the scheduled guidelines allocation. The actual needs will vary from case to case depending on the parents' income level and individual factors pertaining to the child, such as private schooling, special activities, or other amenities which go beyond bare necessities. See Miller v. Schou, 616 So.2d 436, 438 (Fla. 1993). The trial court made such a determination in this case and was confronted with what to do with, if anything, the excess of the support allocation.
Three 1993 amendments to chapter 61 affect this case:
1. In pertinent part, section 61.13(1)(a), Florida Statutes was amended as follows:
61.13. Custody and support of children; visitation rights; power of court in making orders
(1)(a) In a proceeding for dissolution of marriage, the court may at any time order either or both parents who owe a duty of support to a child to pay support in accordance with the guidelines in s. 61.30 as from the circumstances of the parties and the nature of the case is equitable.
Ch. 93-208, § 2, at 1602, Laws of Fla. (additions are indicated by underline: deletions by strikeout).
2. Section 61.13(5), Florida Statutes, was amended as follows:
(5) The court may make specific orders for the care and, custody, and support of the minor child as from the circumstances of the parties and the nature of the case is equitable and provide for child support in accordance with the guidelines in s. 61.30. An award of shared parental responsibility of a minor child does not preclude the court from entering an order for child support of the child.
Ch. 93-208, § 2, at 1603, Laws of Fla. (additions are indicated by underline; deletions by strikeout).
3. Section 61.30 was substantially reworded to increase the maximum combined monthly income in the schedule from $8,400 to $10,000 and to add the following:
For combined monthly available income greater than the amount set out in the above schedules, the obligation shall be the minimum amount of support provided by the guidelines plus the following percentages *998 multiplied by the amount of income over $10,000:

 Child or Children
One Two Three Four Five Six
5.0% 7.5% 9.5% 11.0% 12.0% 12.5%[1]
Ch. 93-208, § 2, at 1603, Laws of Fla. In view of these amendments, the trial court correctly concluded that it was required to apply the guidelines to the parties' total combined income.[2]

JUDICIAL SUPERVISION OF CHILD SUPPORT
The trial court acted within its authority in attempting to regulate and supervise the amount of child support which the court determined exceeds the child's needs. The amount of $1,500 per month for the parties' three-year-old certainly takes into consideration those "extras" this child of an affluent parent needs. See Miller, 616 So.2d at 438. In regard to the excess, the court has the inherent power within its sound discretion to safeguard the minor child's well-being for the present and for the future. In attempting to do so here, the trial court was left to forge new territory without the benefit of established precedent. In fact, we have uncovered only two cases which touch on the subject of judicial supervision of child support, although both are factually dissimilar to this case. In Guilbeau v. Dubberly, 337 So.2d 839 (Fla. 1st DCA 1976), the court stated that if the trial court determined that the mother was not meeting the child's needs it should "more closely order its spending." In Hendry v. Hendry, 340 So.2d 942, 944 (Fla. 4th DCA 1976), the court stated:
If it is apprehended that Ms. Hendry has not competently managed support money intended for the benefit of the daughter, or that she cannot do so now, the chancellor may readily require Mr. Hendry's payments for education and recreation to be paid directly to those providing those services.
We anticipate with the emergence of the concept of "good fortune support" and the removal of the cap on the guidelines that the circumstances the trial court confronted in this case will become more commonplace. As set forth below, we will therefore attempt *999 to define in broad terms the authority of the trial courts in this area.
In addition to the inherent power of the court, we find authority for the trial court's concept of a trust in section 61.13(1)(a), Florida Statutes (1993), which states in pertinent part:
The court initially entering a child support order shall also have continuing jurisdiction to require the obligee to report to the court on terms prescribed by the court regarding the disposition of the child support payments.
In Department of Health & Rehabilitative Services v. Trovillo, 516 So.2d 1145 (Fla. 5th DCA 1987), the court held that section 61.13(1)(a) authorized the trial court to require the custodial parent to make a quarterly accounting to the court as to the expenditure of child support payments.
In this case, the trial court ordered the excess payments to be held in a trust account by a guardian ad litem. The father argues that the creation of such a fund constitutes a prohibited award of postmajority support. We disagree. The benefits of child support paid during the child's minority can extend beyond majority. See Nash v. Mulle, 846 S.W.2d 803 (Tenn. 1993). Such would be the case if the custodial parent decided to dedicate a portion of the periodic payments to a trust for the child's postmajority college education or other needs. We see no distinction if such a fund is mandated by the court. Such a fund, of course, can relate to a child's special needs during minority. Here, we do not know the details of the trial court's plan for the maintenance and use of this trust account because the anticipated detailed order in this regard was not entered. For this reason, we must remand this case for further proceedings.
We hold that a trial court, having determined the actual needs of a child in accord with the standards set forth in Miller, has the authority to formulate and enforce a plan for the maintenance and disposition of those excess monies over and above actual needs. Such a determination must be made on a case-by-case basis. Although this case deals with excess funds, the court's authority to formulate such a plan applies equally to all child support. When appropriate, it would be prudent for the trial court to require the custodial parent to submit a proposed plan to the court. If approved, the court could then require periodic reporting. In the absence of a proposed plan, the trial court can formulate its own plan, flexible enough to take into consideration the changing needs and special circumstances which are bound to occur as the child grows older.
We emphasize that trial courts have no duty to embark upon such a program in every case involving "good fortune" support. The record of the case should support the need for such a plan and the court should be reluctant to encroach upon the independence of the custodial parent unless the court finds it is necessary and appropriate, in the exercise of its sound discretion.
Although we approve the concept of child support management ordered by the trial court, we vacate that portion of the final judgment establishing the trust account because it lacks sufficient detail and direction to be workable. At this point in time, the guardian ad litem is left holding a fund without any defined authority or duty. Therefore, on remand, the trial court may reconsider the necessity of a maintained fund in this case. If the court again determines that such a fund is appropriate, it should first permit the mother to submit a proposed plan. If such a plan is not forthcoming or is unacceptable, the court may then formulate its own plan. In either event, an order of sufficient detail must be entered to permit meaningful appellate review, if necessary.

CROSS-APPEAL
The father argues that the trial court's order mandates an award of postmajority support and, that having determined the child's actual needs to be $1,500 per month, the award should be so limited. Both issues are addressed in our opinion and are without merit.
Reversed and remanded with instructions.
RYDER, A.C.J., and WHATLEY, J., concur.
NOTES
[1] The amendment to section 61.30 is to conform to the requirement in the federal guidelines that there can be no cap on the application of the guidelines. The legislative intent of the amendments to section 61.13(1)(a) & (5) is to require that the guidelines be applied in all cases in response to a number of cases, including Huff v. Huff, 556 So.2d 537 (Fla. 4th DCA 1990); Todesco v. Todesco, 583 So.2d 774 (Fla. 4th DCA 1991); and Trudell v. Williams, 593 So.2d 328 (Fla. 2d DCA 1992), which hold that the guidelines, while helpful, are not to be applied automatically. See Final Bill Analysis & Economic Impact Statement of the House of Representatives Committee on Judiciary to CS/HB 707 (1993). In this opinion, we do not discuss those sections of 61.30 which authorize deviation from the guidelines other than to note that section 61.30(1)(a) is further amended to provide:

The trier of fact may order payment of child support which varies, plus or minus 5 percent, from the guideline amount. The trier of fact may order payment of child support in an amount which varies more than 5 percent different from such guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.
Ch. 93-208, § 5, at 1605, Laws of Fla. (additions are indicated by underline; deletions by strikeout).
[2] The gross annual income of the father at the time of trial was $450,000. The gross annual income of the mother was $25,823.

We recognize that the strict application of the guidelines to extraordinary incomes can lead to an absurd result. As Justice McDonald pointed out in his concurring opinion in Miller v. Schou, 616 So.2d 436, 439 (Fla. 1993):
I must confess considerable uneasiness with the use of the phrase "a child has a right to share in a parent's good fortune." Children have no right to the property of their parents. Their only right is to be supported. The sharing in a parent's good fortune can only relate to a higher standard of living, which includes food, shelter, clothing, education, and recreation. It does not necessarily follow that a child is entitled to trinkets, unnecessary spending money, or the like, simply because there is money available to supply them. The trial judge has great discretion in setting the level of support, but the ability to pay does not authorize a child to needlessly pick the pocket of a parent.
Section 61.30(1)(a), Florida Statutes (1993), authorizes the trial courts to deal with such situations within their sound discretion:
The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.