707 So.2d 1112 (1998)
Geri E. FINLEY, Appellant,
v.
Dennis SCOTT, Appellee.
No. 90071.
Supreme Court of Florida.
January 29, 1998.
Rehearing Denied April 7, 1998.
*1113 Jane E. Carey and Harry H. Morall, II, of Morall & Carey, Orlando, for Petitioner.
Michael R. Walsh, Orlando, for Respondent.
Robert A. Butterworth, Attorney General and Barbara A. Ard, Assistant Attorney General, Tampa, for Amicus Curiae the Attorney General of the State of Florida.
Joseph R. Boyd and William H. Branch of Boyd, Lindsey, Williams & Branch, P.A., Tallahassee, Chriss Walker, Department of Revenue, Office of Child Support Enforcement, Tallahassee, for Amicus Curiae Department of Revenue
Raymond A. Alley, Jr., of Raymond A. Alley, P.A., Tampa, for Amicus Curiae Florida Chapter, American Academy of Matrimonial Lawyers.
WELLS, Justice.
We have for review Finley v. Scott, 687 So.2d 338 (Fla. 5th DCA 1997), which expressly and directly conflicts with the opinion in Boyt v. Romanow, 664 So.2d 995 (Fla. 2d DCA 1995). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
This is a paternity action brought in the circuit court of Orange County by Finley, the mother of a child born February 20, 1993. The complaint sought determination that Scott was the biological father of the child and also sought support for the child pursuant to section 61.30, Florida Statutes (1993).
By order dated January 25, 1994, the trial court adjudicated Scott to be the child's biological father and ordered temporary child *1114 support in the amount of $5000 per month. The trial court's order states that the amount of temporary child support is less than the amount dictated by the child support guidelines imposed by section 61.30(6), Florida Statutes (1993), which would have required child support exceeding $10,000 per month because Scott's gross monthly income was approximately $266,926.[1] In entering an award of temporary child support, the trial court found that it must consider not only the child support guideline amount, but must also consider the actual and bona fide needs of the minor child and the overall financial circumstances of each parent. During this determination of temporary child support, Finley had introduced an affidavit establishing total monthly living expenses of $2128 for herself, the minor child of Scott, and another daughter whose father was not Scott.
In September 1994, Scott filed a petition in the probate division of the Ninth Judicial Circuit in Orange County for the appointment of a guardian of the property of his minor child. Margaret Quarantello, an experienced private guardian of property, was proposed as the guardian of the property. At a hearing held before a judge of the probate division, evidence was presented as to the payment by Scott and use by Finley of the temporary monthly child support payments. The judge found at the end of the hearing that the ordered amount had not been expended for the benefit of the child and that Scott had paid a total of $12,000 above what was needed for the child. The judge declined to honor the preference of the mother in the appointment of the guardian because of "the already-apparent application of a large percentage of the minor's funds to [Finley's] own use and needs." Transcript of Guardianship Hearing at 40, Finley v. Scott, No. PR94-1872 (Fla. 9th Circ.Ct., Nov. 16, 1994). The judge appointed Quarantello to be the guardian of the property of the minor child.
A final hearing in the paternity action was held in December 1994. During this hearing, the trial court considered testimony of the attorney who represented Scott in the guardianship estate for the minor child. The trial court also considered the transcript of the record from the hearing in which the probate division judge appointed the guardian. Additionally, the trial court considered evidence as to the monthly incomes of Finley and Scott and the expenditure of temporary support payments which Scott had made to Finley.
In a paternity judgment dated December 30, 1994, the trial court entered a final adjudication that Scott was the biological father. The trial court awarded primary residential custody and responsibility to Finley, subject to shared parental responsibility. The trial court found that Finley had made misrepresentations to the court concerning financial information and had refused to properly account for the $50,000 of temporary child support that Scott had paid to her.
The trial court found that Finley's request of approximately $10,000 per month in direct child support had no economic relevance to the bona fide actual needs of the child. The trial court found that this Court recently stressed in Miller v. Schou, 616 So.2d 436 (Fla.1993), that "[t]he child is only entitled to share in the good fortune of his parent consistent with an appropriate lifestyle." Id. at 439. The trial court found, based upon section 61.30(1)(a), Florida Statutes (1993), that a court may order a variance of more than five percent from the child support guideline upon a written finding as to why the payments of the guideline amount would be unjust or inappropriate. The trial court stated that it declined to impose the guideline amount suggested by Finley in the amount of $10,011 but rather awarded the sum of $5000 per month because it found that this amount of support was "consistent with the actual *1115 and bona fide needs of the minor child and the overall financial circumstances of each parent and will therefore foster and promote an appropriate lifestyle for her." Final Judgment of Paternity at 14, Finley v. Scott, No. DR93-10246 (Fla. 9th Circ.Ct., Dec. 30, 1994). The trial court further found that $5000 per month "achieves a more equitable result" pursuant to section 61.30(11)(k), Florida Statutes (1993). Id. at 16.
The trial court ordered Scott to pay $2000 per month directly to Finley and $3000 per month to Quarantello, as guardian of the property of the minor child. The court ordered Scott to pay the child support commencing January 1, 1995, "until the minor child attains the age of eighteen years, dies, marries, joins the military service, comes to permanently reside with [Scott] under an order modifying residential custody, until the death of [Scott], or until further order of Court." Id. at 17.
Finley appealed the final judgment, arguing that the trial court should have awarded the full guideline amount, $10,011, and that the trial court had no authority to require any of the support payment to be paid into a guardianship trust. Scott cross-appealed, arguing that the $3000 per month ordered to be paid to the guardian of the property was an abuse of discretion in that the $3000 was in excess of the child's actual needs.
The Fifth District considered the case en banc. The en banc majority held that the trial court erred in awarding child support in the amount of $5000 per month when it found that only $2000 was required to meet the day-to-day living requirements of the child. Finley v. Scott, 687 So.2d 338, 342 (Fla. 5th DCA 1997). The majority concluded that the trial court erred in ordering an additional "good fortune award" of $3000 to be paid to the guardian. Id. at 340. The majority stated that the trial court's judgment in this regard was probably influenced by Boyt v. Romanow, 664 So.2d 995 (Fla. 2d DCA 1995), and by dictum in Schou.[2]Id. at 340. The Fifth District majority acknowledged an apparent conflict with Boyt and stated its disagreement with the Second District's interpretation of Schou as allowing good-fortune awards. Id. The majority below then reversed and remanded "for further action consistent with this opinion." Id. at 344. We interpret this to mean that the district court majority directed the trial court to enter a judgment in which the support amount to be paid to Finley is $2000.
In the district court, Judges Sharp, Goshorn, and Griffin each wrote dissenting opinions disagreeing with the majority's characterization of the issues, the majority's analysis, and the majority's decision to reverse. Regarding the appropriate amount of child support, Judge Goshorn wrote:
In the present case, I find that the trial court correctly determined that it was not bound to mathematically apply the guideline amount; rather, it properly concluded that paragraph 61.30(1)(a) could be applied to situations such as this where the guideline amount would yield an unintended and unreasonable result. See also § 61.30(11)(k), Fla. Stat. (1993) (stating that "the court may adjust the minimum child support award ... to achieve an equitable result ...").
Finley, 687 So.2d at 348. We agree with Judge Goshorn's opinion endorsing a support amount of $5000, the amount awarded by the trial court.
As the trial court's final judgment recognized, the correct analysis of the amount of child support appropriate in this case begins with section 61.30(1)(a), Florida Statutes (1993), which provides:
The child support guideline amount as determined by this section presumptively establishes the amount the trier of fact shall order as child support in an initial proceeding for such support or in a proceeding for modification of an existing order for such support, whether the proceeding arises under *1116 this or another chapter. The trier of fact may order payment of child support which varies, plus or minus 5 percent, from the guideline amount. The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.
This section is followed by section 61.30(6), Florida Statutes (1993), which provides a schedule to be applied in determining the minimum child support need according to combined income and number of children.
We find that the schedule for determining the amount of child support, presumed to be the amount a trial judge awards under section 61.30(6), is clearly rebuttable.[3] The trial court is given the specific authority to order payment of child support which varies more than five percent from the schedule upon a written finding or specific finding on the record explaining why ordering payment of such guideline amount would be unjust or inappropriate. § 61.30(1)(a), Fla. Stat. (1993). Furthermore, in determining child support, the trial court is to consider section 61.30(11)(k), Florida Statutes (1993), which allows for an equitable adjustment of the minimum child support obligation based upon the facts and circumstances of a particular case.
Our reading of the trial court's final judgment is that the trial court adhered to the statute. We do not agree with the district court majority that the trial court's order is an arbitrary "judicial compromise." Rather, we believe that the trial court properly exercised its discretion in finding:
In this case, this Court specifically declines to impose the guideline amount suggested by Petitioner in the sum of $10,011 but will rather award the sum of $5,000 per month as child support because this Court finds that the same is consistent with the actual and bona fide needs of the minor child and the overall financial circumstances of each parent and will therefore foster and promote an appropriate lifestyle for her.
Final Judgment of Paternity at 13-14. Consideration of both the bona fide needs of the child and the financial circumstances of each parent complies with section 61.30, Florida Statutes (1993), and with our decision in Schou. We reject the district court's majority view that consideration of parental financial resources conflicts with the statutory guidelines and with our decision in Schou.
Likewise, we reject Finley's argument that the trial court erred in varying from the guideline amount based on this record. As earlier noted, the statutory guidelines expressly contemplate the exercise of judicial discretion and authority by allowing modification of guideline amounts found to be unjust or inappropriate. The actual expenditure for the needs of the child is evidence the trial court should weigh in determining whether to vary the amount from the guideline formula. We note that the legislature amended section 61.30(1)(a) in 1994 by adding a phrase:
The trier of fact, after considering all relevant factors including the needs of the child or children, age, station in life, standard of living, and the financial status and ability of each parent, may order payment of child support which varies, plus or minus 5 percent, from the guideline amount. The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.
Ch. 94-204 § 2, at 1173, Laws of Fla. (underscoring indicates additions). Although the 1993 statute applies to this case, we accept the addition of this sentence to the statute as clarifying legislative intent that the trial court's decision as to a variant amount is to be based on these factors now listed in section 61.30(1)(a). See Parole Comm'n v. Cooper, 701 So.2d 543 (Fla.1997) (recognizing *1117 propriety of considering subsequent amendment to a statute in interpreting prior statute if amendment was enacted soon after controversy arose); Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla. 1985).
We recognize that decisions as to whether and how much to vary child support awards from amounts dictated by the statutory guideline formula are fact-intensive decisions that depend upon the record in each case. Our analysis concurs with Judge Sharp's well-reasoned dissent, which indicates why the problem in this case begins with the fact-intensive nature of deciding the appropriate amount of child support. Judge Sharp stated:
While I concur with Judge Goshorn's opinion in this case, I appreciate the paradox of requiring a parent to overpay "needs and expenses" for a child, as Judge Harris points out in his majority opinion. The difficulty is in part semantical, and in part practical. The crux of the difficulty is settling on whose standard of living determines the "needs" of this child.
In this case, the mother is raising the child on a much lower standard of living than would be established by the father, if the child were living at his current lifestyle [as a professional athlete] of $266,926.00 gross income per month. He could well afford, for example, a full time nanny, housekeepers, international travel, residence in a mansion with high attendant expenses, and transportation in expensive automobilesa portion of which could be allocated to this child. These expenses could easily equate to the $5,000.00 per month found appropriate by the trial court.
However, the mother is not able, in this case, to live at that standard of living. She must provide for herself and her other two children. They cannot benefit from the child support paid for this child, although the mother tried to do so, and has been properly reprimanded by the trial court for that effort. At her standard of living, the trial court found that only $2,000.00 was actually being spent on this child. However, if the father's child support obligations are limited to this level, the child will not share in her father's much higher standard of living and lifestyle. Clearly the "needs" of this child should not be solely based on what the mother can afford to spend on her, consistent with the mother's much lower standard of living. That also would be inequitable.
Finley, 687 So.2d at 345 (W.Sharp., J., dissenting).
To assist trial courts in making this fact-intensive decision in future cases, we expressly point out that a trial court is to begin its determination of child support by accepting the statutorily mandated guideline as the correct amount. The court is then to evaluate from the record the statutory criteria of the needs of the child, including age, station in life, and standard of living, the financial status and ability of each parent, and any other relevant factors. If the trial court then concludes that the guideline amount would be unjust or inappropriate and also determines that the child support amount should vary plus or minus five percent from the guideline amount, the trial court must explain in writing or announce a specific finding on the record as to the statutory factors supporting the varied amount. Absent an abuse of discretion as to the amount of the variance, the trial court's determination will not be disturbed on appeal if the calculation begins with the guideline amount and the variation is based upon the statutory factors.
We next consider whether the trial judge was authorized to require a part of the money to be paid to the legal guardian of the child's property. We conclude that the trial judge acted within his authority in this case in ordering that the portion of the money not needed for the child's immediate custodial maintenance be paid to the legally appointed guardian of the child's property.
This case differs from Boyt, in which the trial court ordered excess child support payments to be held in a trust account by a guardian ad litem. We believe the appropriate procedure is the one used in the present case and not the procedure used in Boyt. In this case, a probate court decision after guardianship proceedings determined that the child's property required a legal guardianship. Once the probate court determined a need for a guardianship of the property, *1118 then the trial court in the support proceeding could use the guardian to protect the portion of the child support payment that the trial court determined pursuant to section 61.30 was not needed for the child's day-to-day custodial expenses. Through the guardianship, the probate court could exercise judicial supervision of this portion of the funds.
However, the appointment of a legal guardian of the property of a child represents a crucial distinction between this case and Boyt. Our conclusion is that only when the necessity for a legal guardianship of the property has been proven and a legal guardian appointed by the probate court in accordance with chapter 744, Florida Statutes (1997),[4] can the trial court use a guardian to protect the minor's assets. The trial court is not to order any portion of the child support paid into a trust unless a legal guardian has been appointed, and we disapprove Boyt to the extent that it authorizes continuing supervision of the child support award by the court that determined the child support amount or the payment into a guardianship trust to be supervised other than through the probate court.
In this case, the probate court has made a specific finding requiring a court-appointed guardian of the property of the child because the child's custodial parent did not use temporary support payments totally for the benefit of the child. Now the probate court will supervise, through the guardian, the use of the money not required for the child's immediate custodial needs. We find this to be the correct procedure for this case.
Accordingly, we quash the decision of the district court and remand with directions to affirm the trial court's final judgment of paternity.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., specially concurs with an opinion.
ANSTEAD, Justice, specially concurring.
I write separately only to emphasize the controlling principles first clearly articulated by Justice Grimes, in Miller v. Schou, 616 So.2d 436 (Fla.1993):
As a practical matter, it is impossible to believe that any court would award the same amount of child support where the paying parent is a multimillionaire as it would where the paying parent makes a modest living. While technically the child's basic survival needs would be the same in each case, the determination of "need" in awarding child support takes into account more than just the basic necessities of survival. See Smith, 474 So.2d at 1213 ("The child's residence with his mother does not mean that the father must do no more than provide a survival level of support."). The child of a multimillionaire would be entitled to share in that standard of livingfor example to attend private school or to participate in expensive extracurricular activitiesand would accordingly be entitled to a greater award of child support to provide for these items, even though provision for such items would not be ordered in a different case.
Of course, we do not mean to imply that the child of a multimillionaire should be awarded enough support to be driven to school each day in a chauffeured limousine. The point of financial disclosure is not to ensure that the child of a wealthy parent will own a Rolls Royce, but rather to ensure that the trial court will have enough information to allow it to make an informed decision as to the extent of the parent's good fortune and the corresponding extent of the child's right to share in that good fortune. The child is only entitled to share in the good fortune of his parent consistent with an appropriate lifestyle. We believe that Florida's trial courts are fully capable of making the determination of an appropriate amount of support in these cases and will not, as Schou argues, create a class of children who are unduly pampered in the name of *1119 sharing in the noncustodial parent's good fortune.
Id. at 438-39 (footnote omitted).
NOTES
[1] Section 61.30(6), Florida Statutes (1993), provides a schedule for computing minimum child support need based on income and number of children. The subsection also provides in relevant part:

For combined monthly available income greater than the amount set out in the above schedules, the obligation shall be the minimum amount of support provided by the guidelines plus the following percentages multiplied by the amount of income over $10,000.
The chart provided in the subsection specifies that the obligation for one child shall be an additional five percent of the amount of income over $10,000.
[2] In Boyt, the Second District approved the award of child support in excess of the child's actual needs and also approved the payment of the excess funds into a trust for the child, with the court entering the child support order having jurisdiction to supervise the trust. Boyt, 664 So.2d at 996. In Schou, this Court noted that "the determination of `need' in awarding child support takes into account more than just the basic necessities of survival. The child of a multimillionaire would be entitled to share in that standard of living ... and would accordingly be entitled to a greater award of child support...." Schou, 616 So.2d at 438 (citation omitted).
[3] Section 61.30, Florida Statutes (1993), creating rebuttable child support guidelines, is in conformity with 45 C.F.R. § 302.56(f) (1993), which is the federal administrative rule adopted pursuant to the Family Support Act of 1988, 42 U.S.C. § 667 (1994).
[4] A legal guardian of the property appointed in another state in accord with the guardianship of that state may also be used.