BARFIELD, Chief Judge.
The mother challenges those portions of a final order in a paternity proceeding relating to child support and reimbursement of medical bills incurred in connection with the birth of the child. We affirm in part, reverse in part, and remand for further proceedings.
The mother currently works as an office manager and is pursuing a master’s degree in business administration. The father is a 31-year-old professional football player who in March 1997 signed a four-year contract with the Denver Broncos Football Club (Denver) that provides for increasing yearly salaries[1] and a $900,000 *281 signing bonus (paid in three installments in 1997 and a final installment in 1998). The father testified that the signing bonus was used to avoid the National Football League’s “salary cap.” The parties do not dispute that under the contract, Denver has agreed to pay him a total of $925,000 in 1997, $900,000 in 1998, $1,225,000 in 1999, and $1,350,000 in 2000.
The child was born in June 1993. In' September 1993, the mother initiated the paternity action against the father, who was playing for the Detroit Lions at the time. On April 14, 1994, the trial court entered an order finding him to be the child’s father and ordered him to pay $1,500 per month temporary child support “until further order of .Court.” In October 1994, he filed a petition for modification, alleging that after entry of the original order, he had been released by Detroit and had been signed by the Tampa Bay Buccaneers at a “substantially reduced salary,” that he had recently been released by Tampa, and that he “does not anticipate having any earned income for approximately two years while he completes his undergraduate education so that he can become gainfully employed.” After a hearing on December 14, 1994, the trial court entered an order on December 19; 1994, in which it imputed an income of $1,500 per month to the father, ordered him to pay child support arrearages, reduced his temporary child support obligation to $400 per month effective November 1994, and ordered him to provide the mother’s attorney with any future contract with a professional football team, noting that it would “consider modification of child support upon Defendant receiving compensation from the NFL for playing professional football.”
On June 19, 1995, the mother filed a motion for contempt and for reinstatement of the original temporary child support award. She asserted that the December 19, 1994, modification order reducing the father’s temporary child support obligation “was based on the testimony of the Defendant, that he was unemployed and had no prospects of returning to his previous employment, where he earned in excess of $250,000 per year, with a National Football League Team” and that “he anticipated obtaining employment as a Recreation Director in Athens, Georgia for which he expected to be compensated at the rate of $1,500.00 per month.” She asserted that at the time the father gave this testimony, “he had in fact previously signed a contract with the Carolina Panthers of the National Football League,” that she had later discovered this fact from newspaper articles, and that “[i]n furtherance of his clear intent to mislead the Court, the Defendant GREEN has, as of this date, failed to provide counsel with a copy of the afor-ereferenced contract with the Carolina Panthers.” She sought an order reinstating the original temporary child support order retroactive to November 1994, finding the father in contempt and sentencing him to incarceration, and requiring him to pay her attorney fees and costs. The father’s response to the motion admitted that he had signed a contract with the Carolina Panthers “subsequent to the last hearing” which provides for a salary of $100,000 or $250,000, depending upon whether he makes the club’s roster during the 1995 regular season, but asserted that no modification of child support was presently justified because “[u]ntil such time as the regular season begins, Defendant’s sole compensation is in the amount of $200 per week, during training camp and in the amount of $600 per week during pre-sea-son (the month of August).” Attached to the response.was the father’s contract with the Carolina Panthers, which was signed on December 15, 1994, and which indicated that he would be paid $100,000 in 1995 (increasing to $250,000 if he is a member of the club’s active or inactive roster during the 1995 season) and $400,000 in 1996, plus pre-season and post-season travel expenses, bonuses for various contingencies, and a $20,000 signing bonus to be paid in two installments, on the date of signing and on January 15,1995.
*282 On July 26, 1996, trial court entered an order in which it reserved ruling on the mother’s motion, but ordered the father to pay $4,251 in temporary attorney fees and costs, to continue paying $400 per month in temporary child support, and to direct his employer to send $1,200 per week to his attorney’s trust account, to be retained in trust “until further order of this Court.”
On September 27, 1996, the trial court adopted an agreement signed by the parties as superseding all prior support orders. Under the consent order, they would share joint custody of the child, the monthly financial support would be at the discretion of the parents “according to the needs of the child,” and final resolution of the matter “will commence upon the relocation of [the mother and the child] by [the father], to the Atlanta, Georgia area.” In December 1995, the mother filed a motion for relief from the stipulated consent order, alleging that she had been induced into the agreement through the father’s fraudulent representations. She also filed a motion for an emergency hearing on child support, contempt and attorney’s fees, which requested an order finding the father in contempt for not having his employer send $1,200 per week to his attorney’s trust account and ordering him to direct his employer to forward to his attorney any further monies due him, to pay $2,000 per month child support plus health care, dental care, and day care, to reimburse her “for all the medical and dental expenses incurred on behalf of the parties’ minor child, including those related to the birth of said child,” and to pay her attorney fees and costs. The father responded that he had paid more than $3000 for the support of his child since the September 1995 agreement was signed, that the mother had voluntarily vacated his residence in Atlanta, that no emergency existed, that neither he nor his attorney would be available for a hearing in December 1995, and that “no prejudice will accrue to Plaintiff in continuing this hearing to a time when Defendant and his counsel are available for hearing.” On December 21, 1995, the court entered an order continuing the hearing on the emergency motion and ordering the father to pay $1000 per month temporary child support, to pay $2,000 in temporary attorney fees, and to pay his own attorney’s firm $15,000 “to be held in trust by the aforesaid firm for the purpose of the firm paying, on behalf of the Defendant, the aforesaid child support and attorney’s fees in accordance with this Order.”
The hearing on the mother’s pending motions was held on May 29, 1997. Each party presented a financial affidavit and various child support guidelines worksheets. The mother testified that she had $4,160 in outstanding medical bills as a result of the child’s birth. She admitted that the father had given her money to pay the medical insurance premium for the child, but stated that when she told him that the premium had been misquoted by $60, he would not give her the extra $60, and because she did not have $60 to pay the extra amount of the premium, the baby was not covered by her health insurance. She admitted that she never told the father that if he did not send her the extra $60, he would be responsible for the child’s birth expenses. The parties agreed that the child support guidelines[2] require $1,437 per month child support for the first $10,000 per month of the parents’ combined net income plus five percent of any combined income over $10,000, and that if the trial judge deviates more than five percent from that amount, he must give written reasons for the deviation. At the end of the hearing, the judge ruled on the visitation schedule, then addressed the child support issues:
... Well, we’ve got a lot of difficulties with the moneys as to what something is or isn’t. Is it a bonus or is it nonrecurring income, it’s not going to happen again. So I’m going to make my best efforts.
*283 I’m going to set the child support in the amount of $1,500 starting June 1st for the child. I’m going to order that $300 of that moneys be placed into a trust account for the benefit of the child with its primary purpose being to secure future child support payments and hopefully, if things work out for the benefit of the child, after he turns 18.
I’m going to further order that Mr. Green place $20,000 into that trust account and start it. And in consideration of him doing that, I’m going to deny the request for any retroactive child support. I will not determine the effect of the agreement or whether I should go back to 1993 on child support....
The final order, entered on June 11, 1997, “nunc pro tunc May 29, 1997,” determined that the father’s $900,000 signing bonus was “nonrecurring income” under the guidelines “and accordingly should not be used in computing the amount of child support due,” that the amount of child support owed by the father “pursuant to the Child Support Guidelines, is $1,500 per month,” and that “the present need of the child while in the custody of his mother, Karen Elaine Colston, is $1,200 per month.” It then stated:
The Plaintiff has claimed in excess of $76,000 in child support arrearages based upon computing child support pursuant to an application of the Child Support Guidelines to all of the Defendant’s earnings since the birth of the child (including Defendant’s signing bonus). The Court having considered the agreement entered into by the parties on September 19, 1995, and this Court’s order adopting the same, and having considered a reasonable sum of child support arrearage for which the Defendant shall be responsible, the Court determined that said sum should be in the amount of $20,000 that should be placed in trust for the child’s future support needs inasmuch as all of the child’s prior support needs have been made from child support paid by the Defendant to the Plaintiff.
Finding that the father presently earns “substantial sums of money as a football player,” but that his future earning capacity is “unknown,” the court ordered the $20,000 child support arrearage and $300 of the monthly $1500 child support payment to be deposited into a trust account with Merrill Lynch “which shall not be subject to any withdrawal [except for administration expenses] without further order of the court.” It also denied the mother’s claim for reimbursement of $4,160.72 in outstanding medical bills incurred in connection with the birth of the child.
On appeal, the mother asserts that the trial court abused its discretion in the following ways: 1) by failing to follow the child support guidelines, section 61.30, Florida Statutes (1995); 2) by determining that the father’s professional football “signing bonus” was nonrecurring income, in light of subsection 61.30(2)(a)2; 3) by fading to consider the father’s contract salary for 1998, 1999, and 2000, without bonus income; 4) by ordering a portion of the child support monies to be placed in trust for the minor child; 5) by entering a final judgment which is at variance with the court’s ruling; 6) by failing to award sufficient retroactive child support; and 7) by failing to order the father to reimburse her for medical bills incurred in connection with the birth of the child. She seeks reversal of the final order and remand for clarification of the order and for reconsideration of retroactive and future child support.
We find that the trial court did not abuse its discretion by denying the mother’s claim for reimbursement of medical expenses relating to the birth of the child, based upon the evidence presented at the hearing that the father gave her money to pay for coverage of the child through her group health insurance. The denial of this claim is therefore affirmed.
*284 However, we find that the trial court failed to comply with subsection 61.30(2)(a), Florida Statutes (1995), when it refused to consider the father’s signing bonus in calculating his gross income for the purpose of determining the minimum guideline child support need under subsection 61.30(6), and that this failure to comply with the statute affected all further calculations. The lack of clarity in the trial court’s order, which does not explain how the court arrived at either the father’s “guideline” $1500 per month child support obligation or the $20,000 arrearages figure,[3] and which does not appear to rule on the mother’s December. 1995 motion for relief from the September 27, 1995, consent order, requires reversal of portions of the order relating to child support. The trial court’s rulings relating to the father’s signing bonus, the determination of the “guideline” support obligation of the father, the amount of child support arrearag-es, and the placing of child support monies in a trust are reversed. The case is remanded to the trial court for further consideration of these and other issues.
On remand, the trial court is directed to determine the following issues in compliance with sections 61.13 and 61.30, Florida Statutes (1995), in light of the supreme court’s very recent decision in Finley v. Scott, 707 So.2d 1112 (Fla.1998):
1) for each parent, the gross monthly income under subsection 61.30(2)(a),[4] the allowable deductions under subsection 61.30(3), and the net monthly income under subsection 61.30(4);
2) the combined net monthly income of the parents under subsection 61.30(5);
3) the minimum guideline child support need under subsection 61.30(6), using the schedule amount for a combined net monthly income of $10,000 (i.e., $1,437) plus five percent of the amount of combined net monthly income over $10,000;
4) the child care costs incurred due to the mother’s employment or education, less 25 percent, under subsection 61.30(7);
5) whether either of the parents has access at a reasonable rate to group health insurance coverage for the child[5] and if so, which parent shall provide health insurance coverage for the child and the cost of such insurance under subsection 61.30(8);
6) the total minimum support need, calculated by adding the child care costs from step four and the health insurance costs from step five to the minimum guideline child support need from step three;
7) each parent’s percentage share of the child support need under subsection 61.30(9);
8) each parent’s actual dollar share of the child support need under subsection 61.30(10);
9) any adjustment to the minimum child support award, or to either parent’s share of the minimum child support award, which may be needed to achieve an equitable result under subsection 61.30(11), including any adjustment for the health insurance coverage mandated by section 61.13;
10) whether, and if so, why, ordering payment of the amount of child support determined from the child support guidelines would be unjust or inappropriate, and the appropriate amount of child support to be paid by each parent[6];
*285 11) whether the mother is entitled to relief from the September 27, 1995, consent order under Florida Rule of Civil Procedure 1.540(b) on the ground that the agreement between the parties which was adopted by the consent order was induced by fraud, misrepresentation, or other misconduct of the father;
12) whether the need for and the ability to pay child support existed at the time the motions for relief from the consent order and for emergency hearing were filed in December 1995, and if so, what amount of child support the father was obligated to pay from the date of the December 1995 motions to the present (or from the December 19, 1994, order to the present, if the 'court grants the mother’s motion for relief from the September 27, 1995, consent order)[7];
13) the amount of child support the father has actually paid from the date of the December 1995 motions to the present (or from the December 19, 1994, order to the present, if the court grants the mother’s motion for relief from the September 27, 1995 consent order);
14) the amount of child support arrear-ages due, based upon the father’s share of child support from the date of the December 1995 motions to the present (or from the December 19, 1994, order to the present, if the court grants the mother’s motion for relief from the September 27, 1995 consent order) from step twelve, and the amount the father has actually paid during that period from step thirteen; and
15)whether, under subsection 61.13(l)(a), the mother should be ordered to report to the court regarding the disposition of the child support payments, and if so, on what terms.[8]
The trial court’s order is AFFIRMED in part and REVERSED in part. The case is REMANDED to the trial court for further proceedings consistent with this opinion.
WOLF and LAWRENCE, JJ., concur.

. Under the contract his salary will be $275,-000 in 1997, $650,000 in 1998, $1,225,000 in 1999, and $1,350,000 in 2000.

. Section 61.30, Florida Statutes (1995).

. After carefully examining the record of the proceedings below, we cannot determine the basis for the trial court's findings regarding the amount of the father's monthly child support obligation or the amount of child support arrearages.

. In calculating the gross income of the father, the trial court must utilize the signing bonus received by the father under the Denver contract.

. Section 61.13(1 )(b) requires the trial court to order one of the parties to provide health insurance if it is reasonably available.

. After making the appropriate calculations and considering all relevant factors, the trial court may order payment of child support *285 which varies less than five percent from the guidelines amount without explanation. It may also order payment of child support which varies more than five percent from the guidelines amount, but only if it makes a written finding, or a specific finding on the record, explaining why payment of the guideline amount of child support would be unjust or inappropriate and "the statutory factors supporting the varied amount,” see section 61.30(l)(a), Florida Statutes (1995), and Finley v. Scott, 707 So.2d 1112 (Fla.1998).

. If the trial court grants the mother's motion for relief from the September 27, 1995, consent order, there remains pending before the trial court the mother’s motion for contempt and for reinstatement of the original order awarding temporary child support in the amount of $1,500 per month.

. The trial court may, under subsection 61.13(l)(a), require the mother to report to the court, on terms prescribed by the court, regarding the disposition of the child support payments. However, the trial court’s authority to order any portion of the child support to be paid into a trust for the benefit of the child is circumscribed by the supreme court's recent opinion in Finley v. Scott.