734 So.2d 1177 (1999)
Manuel J. RICO-PEREZ, individually and as the Natural Father of and on Behalf of his Minor Child, Andres Manuel Rico-Perez, Appellant,
v.
Juliana RICO-PEREZ, Appellee.
No. 98-2172.
District Court of Appeal of Florida, Third District.
June 23, 1999.
Linda L. Carroll, Miami, for appellant.
Frank A. Abrams, for appellee.
Before SCHWARTZ, C.J., and NESBITT, and JORGENSON, JJ.
NESBITT, Judge.
Post dissolution of marriage, Manuel Rico Perez claimed his monthly child support payments of $6,750 were being misused and sought appointment of a guardian of his minor son's property in the probate division. His ex-wife, the boy's mother, Juliana Rico-Perez, in a combined Answer, Affirmative Defenses, and Motion to Transfer to Family Division, denied the money was being misapplied, stated that she had no objection to a guardian being appointed at father's expense, and stated that she was filing a petition for upward modification. Juliana filed a separate Motion to Transfer Guardianship action to the Family Division after she filed a petition for an increase in child support.
Juliana thereafter filed a Motion to Dismiss for Lack of Jurisdiction and/or Sworn Motion for Summary Judgment with respect to the guardianship proceedings, arguing that as primary residential parent she had already been determined to be the proper individual to deal with the funds of this child. She also filed a supplement to her Motion to Dismiss, arguing that the probate court had no jurisdiction over the matter and that the guardianship petition should be dismissed. The circuit court judge in the Probate Division entered an Order on Jurisdiction, granting Juliana's motion, dismissing the guardianship petition without prejudice and concluding the matter should be decided by the family court which retained jurisdiction at the time of dissolution. Because we conclude that the matter should have been initiated in the family court, we affirm the order under review.
The father in this case alleged that since the couple's June 15, 1995, Final Judgment of Dissolution, which had adopted the parties' "Agreement on Shared Parenting, Visitation and Child Support", the mother had been using the monthly $6750 to pay her mortgage payments, her clothing and entertainment expenses and all her credit card bills. He argued that under Finley v. Scott, 707 So.2d 1112 (Fla.1998), guardianship proceedings in the probate division were appropriate to determine if child support payments were being properly used for the minor.
*1178 We agree with the proposition that guardianship proceedings are appropriate where sums over and above the amounts being used for the child's benefit are accruing each month. However as we read Finley, where a factual scenario presents itself such as in the instant case, the objecting party should first go to the family court which retained jurisdiction over the case, and request an accounting. At that point the complaining party would be obligated to demonstrate to the court that no agreement between the parties precluded such a request and demonstrate that the facts warranted the accounting sought. We caution that there is no reason a properly structured order for accounting of the child's expenses should become an intrusion into the wife's records. See Bacardi v. Bacardi, 727 So.2d 1137 (Fla. 3d DCA 1999)(holding that in light of extremely general language of marital settlement agreement regarding child support, trial judge abused her discretion in ordering accounting of child support payments, where agreement stated that it was understood that child support would be used to pay a variety of expenses, trial court's order compelled ex-wife to account for virtually every penny she had received from ex-husband during 18-month period, and no showing had been made to warrant such a monumental intrusion into ex-wife's financial records).
Upon a proper showing, the resulting accounting will demonstrate either that child support payments are being used in full to support the monthly needs of the child or alternatively, that some portion of the monthly payments are over and above this amount and should be considered a "good fortune award.[1]" Armed with a determination that funds in excess of the child's actual needs[2] are, in fact, accruing each month, it is then that the paying parent may proceed to the probate court and seek the appointment of a guardian in accordance with Finley. Through the guardianship, the probate court will exercise judicial supervision of the excess funds. By the preliminary step of an accounting, the family court will be able to quickly determine the child's financial position, and monthly reasonable and actual expenses. In addition to expediency, this initial but crucial step will eliminate the temptation for a vindictive spouse to haul his/her former spouse into Probate Court to needlessly defend a guardianship proceeding.
Thus we conclude Finley is applicable to the good fortune portion of a child support award once the initial step outlined above has been complied with. Accordingly the order under review is affirmed, without prejudice to the father bringing a guardian *1179 action in the probate court, should an accounting be ordered by the family court and the accounting demonstrate that the child is receiving more money than he requires for his immediate needs.
NOTES
[1] Miller v. Schou, 616 So.2d 436, 438 (Fla. 1993) provides:

While technically the child's basic survival needs would be the same [regardless of the parents' income], the determination of "need" in awarding child support takes into account more than just the basic necessities of survival. [Citation omitted]. The child of a multimillionaire would be entitled to share in that standard of livingfor example to attend private school or to participate in expensive extracurricular activitiesand would accordingly be entitled to a greater award of child support to provide for these items, even though provisions for such items would not be ordered in a different case.
[2] Section 61.30(1)(a)provides:

The child support guideline amount as determined by this section presumptively establishes the amount the trier of fact shall order as child support in an initial proceeding for such support or in a proceeding for modification of an existing order for such support, whether the proceeding arises under this or another chapter. The trier of fact may order payment of child support which varies, plus or minus 5 percent, from the guideline amount, after considering all relevant factors, including the needs of the child or children, age, station in life, standard of living, and the financial status and ability of each parent. The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding explaining why ordering payment of such guideline amount would be unjust or inappropriate.