PER CURIAM.
The father appeals a final judgment of paternity, contending that the court abused its discretion in (1) denying a deviation from child support guidelines, and (2) awarding the cost of “extracurricular” activities where the child had no such activities. .The mother .cross-appeals (1) the refusal of the trial court to include certain restricted stock benefits as part of the father’s income when calculating child support, (2) the failure to include child care costs in calculating child support, (3) the denial of her request -to secure the child support award with life insurance, and (4) *1250 the denial of an award of attorney’s fees in addition to amounts awarded in previous orders. We affirm on all issues, except for the requirement that the father pay the cost of the child’s “extracurricular” activities.

Facts

The father is a highly compensated Wall Street financier. The mother has graduate education, although she was not employed at the time of the child’s birth. The mother brought a petition for paternity, and paternity was proven. After significant litigation, the court conducted a daylong hearing for temporary support at which both parties, as well as forensic experts, testified.
The court entered an extensive fifteen-page order containing findings of fact regarding the parties and their relative incomes, needs of the child, and standard of living. In it, the court found the mother lacked credibility with respect to much of her financial information. The court made an independent review of the child’s needs, determined the needs totaled $4,259 per month, and awarded that amount as temporary child support. The court acknowledged that the temporary amount awarded was a downward deviation from the guidelines support amount, which could be readdressed at the final hearing.
The final hearing was held four months later. At the time of trial, the daughter was eighteen months old. The father contended that nothing had changed since the temporary hearing, particularly with respect to the child’s needs, and that the court should enter the same amount of child support. The court heard from both the father, with regard to his income, and the mother, with respect to her new employment. Although she testified that she had nanny expenses, she did not testify to any specific amount at the trial, simply stating the average range of hourly rates for nannies. She did not testify any further with respect to the child’s needs. A forensic accountant testified regarding the father’s income and whether bonuses or restricted stock units (“RSU”) should be considered income on which child support should be based. Significantly, the father never asked the trial court to take judicial notice of any evidence or findings made by the court in connection with temporary relief. The entire final hearing took less time than the temporary relief hearing. The father argued that the court should not change its ruling deviating from the guideline support for temporary relief and should continue with that amount as a permanent award. The mother argued that the temporary relief order did not apply to a permanent award, that the father had the burden of proving at the final hearing that a deviation should be ordered, and that he had failed in the proof.
The trial court entered a final judgment in which it found that the mother’s income was $50,000 per year and the father’s income for purposes of child support was $161,077 a month, including both base salary and bonuses, but it agreed with the father that the RSUs should not be counted as income for the purposes of child support. The trial court determined that the child support guidelines required a support amount of $8,962 per month. The trial court did not include child care expenses in determining the support amount. It denied the father’s request for a deviation from the child support guidelines amount. Although acknowledging that the father was arguing that there should be no increase from the $4,259 amount awarded as temporary relief, which it noted was entered after a full-day hearing four months before the final hearing, the court found that “the standard of review at trial was not whether there were any substantial changes in circumstances that would *1251 justify modification of the Court’s temporary relief order; rather the court was required to determine the child support to be awarded based upon the testimony and evidence presented during the trial.” The trial court ordered the father to pay for the child’s health insurance, which he was already doing, and also ordered the father to be responsible for 98% of the child’s extracurricular activities, over and above his child support obligation. It did not require the father to secure the award with life insurance. It denied any further award of attorney’s fees to the mother. The father and mother both appeal the final judgment.

Deviation from Child Support Guidelines

“The standard of review for a-child support award is abuse of discretion.” McKenna v. McKenna, 31 So.3d 890, 891 (Fla. 4th DCA 2010) (citation omitted).
As an overall proposition, the father argues that the court failed to follow Finley v. Scott, 707 So.2d 1112 (Fla.1998), in evaluating whether a deviation from the guidelines was appropriate in this case. More specifically, the father argues the trial court erred by (1) incorrectly imposing the burden of proof on the father, (2) failing to take judicial notice of the court file and the findings made by the trial court'in granting the temporary relief, and (3) incorrectly concluding there was insufficient evidence to support a downward deviation from the guideline child support amount. After discussing case law and statutory provisions, we address the father’s arguments sequentially.
Finley is the seminal case in Florida on the appropriate analysis to be used by the trial court in determining an initial award of child support and whether it is appropriate to deviate from awarding a guideline amount of child support by more than five percent. Finley involved a paternity action between .a professional basketball player making $266,926 per month and a mother with extremely limited means. Id. at 1114.
In Finley, the court explained that the determination of the amount of child support to be awarded begins with section 61.30(l)(a), Florida Statutes, which provides, in part:
(l)(a) The child support guideline amount as determined by this section presumptively establishes the amount the trier of fact shall order as child support in an initial proceeding for such support or in a proceeding for modification of an existing order for such support, whether the proceeding arises under this or another chapter. The trier of fact may order payment of child support which varies, plus or minus 5 percent, from the guideline amount, after considering all relevant factors, including the needs of the child or children, age, station in life, standard of living, and the financial status and ability of each parent. The trier of fact ■ may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon■ a written finding explaining why ordering payment of such guideline amount would be unjust or inappropriate.
Id. at 1115-16 (emphases added). Additionally, the court noted that two other subsections of section 61.30 are important to the analysis: subsection (6), which is the table of guideline support amounts; and subsection (ll)(k), which allows for an equitable adjustment of the minimum' child support obligation,- based on a list of criteria.[1] Id. at 1116.
*1252 The Finley court held- that “the schedule for determining the amount of child support, presumed to be the amount a trial judge awards under section 61.30(6), is clearly rebuttable,”-, and section 61.30(ll)(k) “allows for an equitable adjustment of the minimum child support obligation based upon the facts and circumstances of a'particular case.” Id. .The court then provided guidance to trial courts in considering deviations from the guidelines:
To assist trial courts in braking this fact-intensive decision in future cases, we expressly point out that a trial court is to begin its determination of child support by accepting the statutorily mandated guideline as the correct amount. The court is then to evaluate from the record the statutory criteria of the needs of the child, including age, station in life, and standard of living, the financial status and ability of each parent, and any other relevant factors. If the trial court then concludes that the guideline amount would be unjust or inappropriate and also determines that the child support-.amount should vary plus or minus five percent from the guideline amount, the trial court must explain in writing or announce a specific finding on the record as to the -statutory factors supporting the varied amount. Absent an abuse of discretion as to the amount of the variance, the trial court’s determination will not be disturbed on appeal if the calculation begins with the guideline amount and the variation is based upon the statutory factors.
Id. at 1117. Further, the court-explained: “The actual expenditure for the needs of the child is evidence the trial court should weigh in determining whether to vary the amount from the guideline formula.” Id. at-1116 (emphasis added).
’ We disagree with the father’s first contention that'the trial court erred in imposing the burden of proof regarding deviation on him. The contention is premised on the mistaken assertion that the rebuttable presumption estáblished by section 61.30(a) is a presumption defined by section 90.303, Florida Statutes, as a presumption affecting the burden of producing evidence. See § 90.303, Fla. Stat, (2014). In establishing child support guidelines, the legislature was clearly expressing the strong public policy of this state, emphasizing the importance of protecting - children, by assuring that their parents who are not living together provide adequate financial support for them. See § 61.29, Fla. Stat. (2014). Thus, the presumption establishing the appropriate amount of child support is a presumption defined by section 90.304, a 'presumption affectirig .the burden of proof. See § 90.304, Fla. Stat. (2014). “A presumption affecting the burden of proof .,. imposes upon the party against whom it operates the burden- of proof concerning the nonexistence of the presumed fact.” § 90.302(2), Fla. Stat. (2015). . Thus, the trial court properly placed upon the father the burden of persuasion that the presumptive guideline. support amount was inappropriate.
*1253 We also- disagree with the father’s contention that the trial court erred by failing to take judicial notice of the court file and the findings made by the trial court in granting the temporary relief. The fatal flaw in his contention is his fail-, ure to ask the trial court to take judicial notice of the evidence presented or determinations made during the temporary relief proceeding. It is clear from the record that the father expected the trial court to take judicial notice of the temporary relief proceedings, but even when thé trial court questioned the propriety of relying on evidence considered at the temporary relief hearing, the father never asked the court to take judicial notice. Thus, the issue was not preserved or argued in the- trial court.[2]
Although it may have been appropriate for the trial court to take judicial notice of the evidence presented at the temporary relief hearing regarding the financial needs of the child, our review of the record leads us to conclude that it would have been inappropriate for the trial court to take judicial notice that the appropriate amount of child support for the child is $4,259. That is because the transcript of the final hearing demonstrates that the evidence of the father’s income at the temporary relief hearing was significantly understated from the amount established at the final hearing.
The father further argues that the mother’s failure to present evidence of the child’s needs at the final hearing is an additional reason he is entitled to a downward deviation. To support his contention, the father relies upon our opinion in Johns v. Richards, 717 So.2d 1103 (Fla. 4th DCA 1998). More specifically, the father relies on our statements in Johns that:
We agree that the mother in a paternity action has the burden of establishing not only her income for the relevant period, but also other relevant facts, such ' as where the child has resided, who has taken care of the child, and what additional private or public resources have been utilized to provide for the child. Placing this burden on the mother is appropriate, because such information is solely and readily available to the mother, and the trial court cannot properly exercise its discretion in setting the amount of child support without it.
Id. at 1105. However, the father’s reliance on Johns is misplaced. The statement quoted above was in the context of a mother seeking retroactive child support, where the statute in effect stated that a factor to be considered' is “[a]ll actual payments made by the noncustodial parent to the custodial parent or the child or third parties for the benefit of the child throughout the proposed retroactive period.” Id. at 1104 (emphasis added) (quoting § 61.30, 'Fla. Stat.1997). Although the facts of the case are not discussed in detail, it appears in Johns there may have been issues of whether the mother received public assistance, because the father asked the trial court to adopt the position of the Fifth District at the time, which was that retroactive child support should be awarded on a theory of reimbursement. Id. at .1103.
Additionally, the father’s reliance on Johns is not helpful, because, like the mother in Johns, the mother in this case *1254 did present evidence of where the child has resided, who has taken care of the child, and what additional private or public resources have been utilized to provide for the child.
Thus, we conclude the father has not demonstrated reversible error in the trial court’s denial of a downward deviation from the guideline child support amount.

Extracurricular Activities, Child Care, and Life Insurance

The father argues that the court abused its discretion by imposing, in the parenting plan, an additional financial obligation requiring him to pay 98% of the child’s extracurricular activities, over and above the maximum amount of child support, where there is no record support for the inclusion of this additional financial 'obligation. We agree that there was no evidence that the child was involved in any extracurricular activities, and the trial court’s open-ended award could subject the father to the expense of any extracurricular activity in which the mother may involve the child without any input by the father or regard as to its cost. Thus, we reverse the trial court on that issue.
On cross-appeal, the mother argues that the court erred in failing to order the father to pay the cost of child care in addition to the child support guideline amount. The court determined that the mother had failed to present evidence of a specific amount. The mother argues the trial court erred because the order of temporary support included an amount that the court found covered child care. However, like the father, the mother did not ask the trial court to take judicial notice of the evideneé or the findings in the temporary support proceeding. Thus, we affirm on that issue.
The mother also contends on cross-appeal that the trial court abused its discretion in failing to order the father to .secure payment of the award of child support with life insurance. The court determined that the.-mother had not presented any evidence on this issue: “To the extent necessary, to protect an award of child support, the court may order the obligor to purchase or maintain a life insurance policy or a bond, or to otherwise secure, the child support award with any other assets which may be suitable for that purpose.” § 61.13(l)(c), Fla. Stat. (2015). “As the statute itself indicates, the circumstances must suggest a necessity for such protection, and therefore the trial court should make appropriate findings regarding the necessity of insurance protection.” Guerin v. DiRoma, 819 So.2d 968, 970 (Fla. 4th DCA 2002); see also Velaga v. Gudapati, 148 So.3d 550, 551 (Fla. 2d DCA 2014); Cissel v. Cissel, 845 So.2d 993, 995 (Fla. 5th DCA 2003). Because the mother presented no evidence to support a finding that circumstances suggested a necessity for life insurance protection of the child support award, we affirm the trial court on that issue.

Refusal to Include Stock Options in Income

On cross-appeal, the mother contends that the trial court erred in refusing to consider the RSUs received by the father as part of his income for purposes of child support. The RSUs are promises by the father’s employer to deliver shares of the employer’s company stock in the future.- The forensic accountant did not treat -them as income for the purposes .of child support because they were non-income producing assets and were more like retirement benefits. The trial court accepted the accountant’s unrebutted testimony, which provided competent substantial evidence for the court’s determination *1255 to exclude those payments as income for the child support calculation. Without the RSUs, the father’s income still exceeded $160,000 per month, clearly enough to pay sufficient child support for. his daughter. Thus, we affirm the trial court on that issue.

Attorney’s Fees

Finally, in the final judgment, the court thoroughly considered the attorney’s fees requested by the mother, which were considerable ($267,000). The mother has had several attorneys represent her throughout these proceedings. Her first attorney withdrew well before the final hearing. One of the mother’s other attorneys testified that the mother owed the first attorney $189,000, although no billing records were produced, nor did the first attorney testify as to his billings, hours expended, or hourly rate.
As to the second attorney, the court heard the testimony and reviewed an affidavit presented by this attorney, although no billing records were produced. Based upon this evidence, the court determined a reasonable number of hours (28) and hourly rate ($350), calculating a reasonable fee of $9,800. It found that the costs incurred by the attorney were not documented nor were many of them necessary. Competent substantial evidence supported the court’s calculations.
The mother’s trial attorney, the third attorney, was not hired until several days prior to trial. The court determined the reasonable number of hours (35.7) and hourly rate ($350) for the trial attorney, which resulted in a fee of $12,554.
However, the court did not order the father to pay any further fees because the court had ordered, and the father had paid, $30,000 for fees and $10,000 for costs under prior orders for fees, an amount expected to be the reasonable fee for the entire litigation. . In other words, the father had already paid more than what the trial court found were reasonable and necessary for prosecution of the entire litigation. It noted that, at a reasonable hourly rate of $350, the $30,000 fee would have covered 85.71 hours of work in the case from start-to finish, stating: “This fee award was more than ample for the Petitioner to receive competent, thorough representation given the issues in dispute.” Therefore, it denied the additional request for attorney’s fees.
The trial court has broad discretion in awarding or denying attorney’s fees in a paternity action, which is governed by section 61.16, Florida Statutes (2015), and an appellate court will reverse only when there has been an abuse of that discretion. See Kaiser v. Harrison, 985 So.2d 1226, 1228-29 (Fla. 5th DCA 2008). Here, the trial court painstakingly reviewed the evidence. Consistent with Rosen v. Rosen, 696 So.2d 697 (Fla.1997), the court considered the litigation history, that, in an effort to harass the father, unnecessary fees were incurred, and the fact that the issues were not overly complicated. We cannot conclude that the court abused its discretion. We are mindful of the quotation of Justice Parker Lee McDonald that the trial court used in its order on temporary fees:
I also want to note that the setting of reasonable child support, whether initially or on modification, should not be a complicated affair. Needs and abilities are not that difficult to define. • Hence, it should be done expeditiously and relatively inexpensively. Too many cases are overlitigated to the detriment of the parties. This may, or may not, be one of them, ■
Miller v. Schou, 616 So.2d 436, 439-40 (Fla.1993) (McDonald, J., concurring) (em *1256 phasis added). The trial court concluded that this was such a case. We do not disagree with that conclusion.
For the foregoing reasons, we affirm the trial court on all issues raised on appeal, except for the order requiring the father to pay 98% of the child’s extracurricular activities. We reverse as' to that issue and remand for proceedings consistent with this-opinion;

Affirmed, 'in part, reversed in part, and remanded.

MAY and CONNER, JJ., concur.
WARNER, J., concurs in part and dissents in part with opinion.

. Finley discussed the 1993 version of section '61.30, which listed the statutory deviation fac *1252 tors under subsection (11). 707 So.2d at 1116. The current list of statutory deviation factors is found under subsection (ll)(a). See § 61.30(1 l)(a), Fla. Stat. (2016). Although several statutory'deviation factors were listed in the 1993'version of the statute were arguably applicable to the facts in Finley, the supreme court only cited to subsection (ll)(k), which stated: "Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt. Such expense or debt may include, but is not limited to, a reasonable and necessary expense or debt which the parties jointly incurred during the marriage.” § 61.30(1 l)(lc), Fla, Stat. (1993).

, We note that the father did not comply with the procedural requirements of section 90.203, Florida Statutes (2015). Despite that noncompliance, the father could have invited the trial court to take judicial notice on its own initiative, but, even under that scenario, the trial court would have been required to afford the mother an opportunity to explain why judicial notice would be unfair to her. Cf. Cinci v. State, 642 So.2d 572, 573 (Fla. 4th DCA 1994).