616 So.2d 436 (1993)
June MILLER, Petitioner,
v.
Michael J. SCHOU, Respondent.
No. 78636.
Supreme Court of Florida.
April 8, 1993.
Andrew S. Berman and Barry S. Franklin, Young, Franklin & Berman, P.A., North Miami Beach, for petitioner.
Paul Siegel and Paul Louis, Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A., Miami, and Lyndall M. Lambert, Barwick, Dillian & Lambert, P.A., Miami Shores, for respondent.
Deborah Marks, North Miami, and A. Matthew Miller, Hollywood, amicus curiae, for The Family Law Section of The Florida Bar.
GRIMES, Justice.
We review Schou v. Miller, 583 So.2d 805 (Fla. 3d DCA 1991), because of its conflict with Walton v. Walton, 537 So.2d 658 (Fla. 1st DCA), review denied, 545 So.2d 1370 (Fla. 1989). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
June Miller and Michael Schou were divorced from each other in 1983, when *437 Schou was a medical resident earning a modest income. In the Final Judgment of Dissolution Miller was given primary physical custody of their child and Schou was ordered to pay $500 per month in child support.
Shortly after the dissolution, Schou began his own private practice as an anesthesiologist. In March, 1990, Miller filed a petition for modification of child support alleging a substantial change in circumstances, namely the increased needs of the child, a substantial increase in Schou's income, and the lessened value of the original award due to the impact of inflation.
In June, 1990, Miller served a request for production of documents on Schou, seeking extensive financial information. In response, Schou filed a motion for protective order in which he stated that he had the financial ability to pay child support of $3,000 per month if it were to be awarded by the court.[1] In view of this admission of ability to pay, Schou claimed that his financial condition was no longer an issue in the case and sought protection from any financial discovery.
The trial court denied Schou's motion and ordered him to provide a financial affidavit, but deferred ruling on Miller's other discovery requests. Schou then filed a petition for certiorari in the Third District Court of Appeal. That court granted certiorari and quashed the order compelling Schou to provide a financial affidavit. The court held that since Schou stipulated that he had the ability to satisfy any increase in the child's needs sought by Miller, the ordering of a financial affidavit was a departure from the essential requirements of the law.
Rule 1.611(a) of the Florida Rules of Civil Procedure now provides that a party against whom relief is sought in a suit for child support modification shall serve a financial affidavit upon the other parties. However, the rule in this form only went into effect on January 1, 1993, and was significantly changed from its previous form. See In re Amendments to the Florida Rules of Civil Procedure, 604 So.2d 1110, 1173 (Fla. 1992). The old version of the rule which is applicable in the present case required the production of a financial affidavit by the parties only in applications for "temporary alimony, child support, attorneys' fees or suit money." While a reasonable argument can be made that the old rule was broad enough to encompass a petition to increase child support, we do not have to reach that question. Even if the rule was not directly applicable, we believe it was within the trial court's discretion to order compliance with reasonable discovery, including ordering the submission of a financial affidavit.
Schou argues that requiring the financial affidavit was an abuse of the trial court's discretion because his stipulation of ability to pay removed his financial status as an issue in the case. See, e.g., Calvo v. Calvo, 489 So.2d 833, 834 (Fla. 3d DCA 1986) (ordering trial court to grant motion for protective order where party's financial status irrelevant to any issue before court). This argument may have had merit if the child's needs were the only issue left to be decided, but such is not the case. As previously noted, one of the reasons given as a basis for modifying the child support award was the increased income of Schou, the paying parent. The Third District Court of Appeal itself has stated that "a minor child has every right to share in the good fortune of his or her parents, even after their divorce, given the minor child's general entitlement to the bounty of his or her parents and the fact that the parent-child relationship continues notwithstanding the divorce." Bedell v. Bedell, 561 So.2d 1179, 1182 (Fla. 3d DCA 1989), quashed in part on other grounds, 583 So.2d 1005 (Fla. 1991). Accordingly, all five district courts of appeal have recognized that a substantial change in the paying parent's income is itself sufficient to constitute a change in circumstances warranting an increase in child support without a demonstration of increased need. See, e.g., Asrani v. Asrani, *438 591 So.2d 283, 284 (Fla. 4th DCA 1991); Hosseini v. Hosseini, 564 So.2d 548, 550 (Fla. 1st DCA 1990); Smith v. Smith, 474 So.2d 1212, 1213 (Fla. 2d DCA 1985), review denied, 486 So.2d 597 (Fla. 1986); Wanstall v. Wanstall, 427 So.2d 353, 355 (Fla. 5th DCA 1983); Schottenstein v. Schottenstein, 384 So.2d 933, 935 (Fla. 3d DCA), review denied, 392 So.2d 1378 (Fla. 1980).
Notwithstanding, we recognize that some district court of appeal opinions state that a party petitioning for an increase in child support must demonstrate not only an increase in ability to pay but also an increase in the child's needs which may be met only by a change in the existing support award. Shufflebarger v. Shufflebarger, 460 So.2d 982, 984 (Fla. 3d DCA 1984); Young v. Young, 456 So.2d 1282, 1284 (Fla. 3d DCA 1984). We hold that an increase in ability to pay is itself sufficient to warrant an increase in child support and disapprove these opinions to the extent they are contrary to this holding. Cf. Bedell v. Bedell, 583 So.2d 1005 (Fla. 1991) (a substantial increase in the financial ability of the paying spouse, standing alone, may justify but does not require an order of increased alimony).
It follows, then, that the need of the child is only one of several factors to be considered in determining an appropriate amount of support. We reject Schou's argument that merely knowing the child's needs as gleaned from Miller's financial affidavit and knowing that Schou has a substantial income sufficient to satisfy those needs is enough to allow the court to make a support determination. Without knowing Schou's financial status it would be impossible for the trial court to determine the appropriate amount of the increase in support to allow Schou's child to share his good fortune. Simply informing the court that Schou could provide a certain amount of child support did not provide the court with information as to the amount of support which would be reasonable.[2] Schou could be making two hundred thousand dollars a year or ten million dollars a year; either would be sufficient to satisfy the $3000 amount Schou said he could pay, yet the amount of support awarded would be drastically different in each case.
As a practical matter, it is impossible to believe that any court would award the same amount of child support where the paying parent is a multimillionaire as it would where the paying parent makes a modest living. While technically the child's basic survival needs would be the same in each case, the determination of "need" in awarding child support takes into account more than just the basic necessities of survival. See Smith, 474 So.2d at 1213 ("The child's residence with his mother does not mean that the father must do no more than provide a survival level of support."). The child of a multimillionaire would be entitled to share in that standard of living  for example to attend private school or to participate in expensive extracurricular activities  and would accordingly be entitled to a greater award of child support to provide for these items, even though provision for such items would not be ordered in a different case.[3]
Of course, we do not mean to imply that the child of a multimillionaire should be awarded enough support to be driven to school each day in a chauffeured limousine. The point of financial disclosure is not to ensure that the child of a wealthy parent will own a Rolls Royce, but rather to ensure that the trial court will have enough information to allow it to make an informed *439 decision as to the extent of the parent's good fortune and the corresponding extent of the child's right to share in that good fortune. The child is only entitled to share in the good fortune of his parent consistent with an appropriate lifestyle. We believe that Florida's trial courts are fully capable of making the determination of an appropriate amount of support in these cases and will not, as Schou argues, create a class of children who are unduly pampered in the name of sharing in the noncustodial parent's good fortune.
Much of Schou's argument to this Court is focused on the extensive cost of preparing the documents and statements sought in the name of financial disclosure and on the justified concern of courts and parties in lessening the onerous burden of litigation costs in these matters. We therefore note that the filing of a modification petition alleging good fortune does not in and of itself entitle the petitioning parent to a wholesale foray into all of the paying parent's financial documents. We share Schou's concern that the costs of litigation be held in check, but we do not believe that this requires that we give leave to parties to avoid any disclosure at all where to do so would require courts to make the determination of the appropriate amount of child support without having essential information. Instead, we leave the extent of discovery in the able hands of the trial court, to determine within its discretion whether the particular disclosure is reasonable. See Fla.R.Civ.P. 1.280(c); Orlowitz v. Orlowitz, 199 So.2d 97, 98 (Fla. 1967) (noting trial court's power to protect parties against unwarranted financial disclosure).
In this case, the trial court has thus far ordered only a financial affidavit and has reserved ruling on Miller's motion to compel additional financial disclosure. Certainly the extent of discovery so far cannot be considered onerous. We express no opinion on the necessity or appropriateness of Miller's additional informational requests.
For the foregoing reasons, we quash the decision below and remand the case for further proceedings consistent with this opinion. The opinion of the district court of appeal in Braverman v. Braverman, 549 So.2d 750 (Fla. 3d DCA 1989), is disapproved to the extent it is inconsistent with this opinion.
It is so ordered.
BARKETT, C.J., and SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, J., concurs with an opinion.
OVERTON, J., concurs in result only.
McDONALD, Justice, concurring.
I have a great temptation to approve the decision under review. Had the trial judge decided that the financial affidavit was not needed, I almost certainly would do so. He felt, however, that the father's affidavit was needed in order to properly assess the level of reasonable child support payments. No abuse of discretion in that assessment is indicated and, thus, the district court should have affirmed the trial court's order. Both parents have a responsibility to provide child support for their children. It is necessary to determine each parent's relative capabilities even in circumstances where either can fully and adequately support the child or children. A trial judge can obtain information on the financial condition of each parent.
I must confess considerable uneasiness with the use of the phrase "a child has a right to share in a parent's good fortune." Children have no right to the property of their parents. Their only right is to be supported. The sharing in a parent's good fortune can only relate to a higher standard of living, which includes food, shelter, clothing, education, and recreation. It does not necessarily follow that a child is entitled to trinkets, unnecessary spending money, or the like, simply because there is money available to supply them. The trial judge has great discretion in setting the level of support, but the ability to pay does not authorize a child to needlessly pick the pocket of a parent.
I also want to note that the setting of reasonable child support, whether initially or on modification, should not be a complicated affair. Needs and abilities are not *440 that difficult to define. Hence, it should be done expeditiously and relatively inexpensively. Too many cases are overlitigated to the detriment of the parties. This may, or may not, be one of them.
NOTES
[1] The $3000 amount was Schou's estimate of the child's needs as reflected in Miller's financial affidavit. Miller's petition for modification did not ask for a specific amount of support.
[2] Our position would be the same even if Schou had stipulated that he had the financial ability to pay any reasonable award of child support.
[3] This basic principle is recognized in the statutory child support guidelines, which award greater support as the parents' income increases. Section 61.30, Fla. Stat. (1991). If courts could only take into account and order the providing of the basic necessities of survival, the amount of child support would be the same no matter what the income of the parents. We reject Schou's argument that because there is an upper limit to the amount of support outlined in the guidelines a child's needs are finite and the statute sets out the point at which every child's needs are satisfied. Nothing in the statute or case law suggests that the statute lists the maximum amount of support which could be awarded no matter what the parents' income or financial ability.