HARRIS, Chief Judge,
concurring and concurring specially:
While I agree that this matter should be reversed, I believe we should give more guidance to the trial judge on remand than the per curiam opinion does. I do not believe that the discretion of the trial court, even in light of section 61.30(l)(b)2, Florida Statutes, is as broad as many suggest.
In this case, the father’s net annual income for the purpose of determining support is $139,200 ($11,600 per month). The mother is unemployed. The father has been voluntarily contributing $350 per week as support of the child since its birth (approximately $1,500 per month) — the same amount he pays as support for each of three children by a previous marriage. At trial, the mother submitted evidence of itemized expenses aggregating $1,868 per month. It is conceded, however, that this figure not only covers support for the child but also repayment to the mother for her total rental expenses as well as her car payments and ear insurance. The court awarded $2,750 per month child support.
Section 742.031, Florida Statutes, requires that the parents in a paternity action “pay support pursuant to section 61.30.” Section 61.30, however, covers income only up to $100,800 per year and then provides that support in cases in which the income exceeds that amount shall be determined on a “case by case review.” This does not mean, however, that the principles underlying the support guidelines do not apply to incomes greater than those listed in Section 61.30. We have indicated, for example, that even if the parents’ income exceeds the statutory index amount, “the guidelines should still be applicable as a point of reference,” and that the top of the guideline bracket should be the bottom of any award in which the income exceeds the table.[1] I would hold, consistently, that it is also the maximum that can be awarded for the first $100,800 of incomes not covered by section 61.30. Only in this way is equality of treatment assured.
The essence of justice is that all persons under similar conditions are treated substantially the same under the law. This does not merely mean women should be treated the same as men, blacks the same as whites, and Catholics the same as Jews; it also means that any two persons, regardless of gender, race or religion, under similar circumstances, should receive substantially the same result in litigation before our courts.
This concept — the concept of comparable fairness — is not unlike the doctrine of proportionality applied in capital proceedings and has the same constitutional aura because of the “equal protection” requirements of Article 1, section 2 of the Florida Constitution and Article 14, section 1 of the Constitution of the United States.
An example of comparable fairness on the federal level is the progressive income tax in which all persons are required to pay the same rate on income within the same tax bracket. I submit that this should also be trae of support requirements imposed by court order. All parents should pay substantially the same amount based on comparable income.
Just because all litigation is not covered by specific statutes or tables, does not mean that comparable fairness should be ignored. Judicial discretion, properly limited and evenhandedly applied, is one method' of providing comparable fairness.
Although Canakaris is normally cited as limiting appellate review, it also recognizes a requirement of comparable fairness.
Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the *769 same facts comport with neither logic nor reasonableness.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).
Some would divorce the trial court entirely from the statutory guidelines (except from a minimum amount based on those guidelines) in all cases in which the parents’ combined incomes exceed $100,800. This would mean that if the parents have a combined income of $102,000, then the amount of support is within the sole discretion of the trial judge. In such instance, the court could, for example, require the parent to pay (instead of $1,153 per month based on the extended table) $1,300 per month. This would mean that the increase not only consumes all of the excess income but also increases the maximum rate under the guidelines on the first $100,800 from 13.7 to 14.3 per cent. I would find this patently unconstitutional as a violation of the equal protection requirements of both the federal and state constitutions.
Some suggest that child support should be based on the parent’s income and the standard of living which the parent could or should provide the child (as opposed to the standard of living actually enjoyed by that parent). I submit that divorced or unwed parents who are required to pay support should, like married parents, be permitted to establish their own standard of living. Everyone does not live to the maximum extent of their income. Some save, invest and donate a portion of their income. The guidelines take this into account and establish a statutory, uniform, minimum standard of living to be imposed equally on all parents.
The principles on which the guidelines are based should also be applicable to those who make in excess of $100,800. The legislature has determined certain principles relating to child support. One is that the cost of raising a child does not increase at the same rate as the parents’ incomes. Many costs are standard regardless of income.
Before 1991, those parents making in excess of $50,000 annual income were excluded from the table. There was the same requirement for a “ease by case” analysis in those eases outside the guidelines. But then the legislature determined that the same principles that originally applied only to couples with a combined net income of $50,000 should be extended to those couples whose combined net income reaches up to $100,800 and amended the table accordingly. The 1991 table is identical to the previous 1989 table insofar as the combined income figures up to $50,000 are concerned. It should be noted that the extended table never increases the rate of support to income over the original table. It gradually but consistently decreases the rate as the income increases.
Using the table, then, as a reference, once the net monthly income reaches $7,600 ($91,-200 annual income), the increase in child support for the balance of the table is five percent of the increased' income. If we extend the table based on a five percent increase up to the $11,600 monthly income, the amount of total support would be $1,308 per month. The court’s award in this case was $1,600 per month in excess of the table maximum ($1,148) for an increase in income of only $3,200 per month. This required that 50 percent of all of the father’s income over $100,800 must go to child support for one child.
I would not hold that the court must so rigidly extend the table as I have done in this analysis, but it appears to me that the principles of the support guidelines dictate that the percentage of income over $100,800 to be allocated for child support should be less than, rather than more than, five percent. As earlier indicated, the percentage of income going to child support dropped when the table was extended from $50,000 to $100,-800.[2] I would hold that if the court awards an amount indicating a rate substantially greater than the five percent suggested by the guidelines, then it should state why such greater rate is justified. Only in this way can an appellate court conduct a meaningful analysis of comparable fairness.
*770 The above analysis was made prior to the supreme court’s release of Miller v. Schou, 616 So.2d 436 (Fla.1993).[3] However, after considering Miller, I do not believe that it is inconsistent with the previous analysis.
I agree with Justice McDonald’s statement in his concurring opinion:
I must confess considerable uneasiness with the use of the phrase “a child has a right to share in a parent’s good fortune.” Children have no rights to the property of their parents. Their only right is to be supported. The sharing in a parent’s good fortune can only relate to a higher standard of living, which includes food, shelter, clothing, education, and recreation. It does not necessarily follow that a child is entitled to trinkets, unnecessary spending money, or the like, simply because there is money available to supply them. The trial judge has great discretion in setting the level of support, but the ability to pay does not authorize a child to needlessly pick the pocket of a parent.
Miller, 616 So.2d at 439.
Giving Justice Grimes’ words their broadest meaning, it would mean the affluent parents would not be permitted to raise their children in a modest manner in order to instill proper values and to build character. It would also mean that such parents could not choose to send their children to public schools since they have the means to send them to more expensive, more exclusive private schools. Further, the automobile for the child at sixteen would no longer be a matter of grace to reward the child for academic achievement or exemplary deportment, but rather a matter of right because of the child’s “right” to benefit from his or her parents’ good fortune. The legitimate child-rearing decisions appropriately belonging to the parent would thus be further eroded by State action. The support guidelines were intended to set a minimum level of support that a parent could not elect to go below. But the extent that such parent might wish to exceed this minimum level (as set by the guideline or the extension thereof) should be left to the parents’ discretion. To say that once the parents’ income exceeds $100,800 the court is free to “award” the child such portion of the parents’ estate as the court in its sole discretion deems appropriate — unrestricted by the guideline principles — is both unfair and discriminatory. This case graphically points that out.
I nevertheless recognize the obligation to apply the law as imposed by the majority of the supreme court. But if you construe the Miller majority consistent with the court’s earlier opinions and with the constitutional requirement of equal protection, then it does not stand for the proposition that a trial judge has unlimited and unbridled discretion to force an affluent parent to “share his wealth” with his or her children. Court ordered child support was never intended to shift the parent’s estate to the child.
After all, it has long been the law in this state that a parent can disinherit even his or her child. J.E.W. v. Estate of Doe, 443 So.2d 249 (Fla. 1st DCA 1983), rev. denied, 451 So.2d 848 (Fla.1984); appeal dismissed, 469 U.S. 1030, 105 S.Ct. 499, 83 L.Ed.2d 392 (1984). Further, while courts have held that a child born out of wedlock is entitled to treatment equal to the legitimate child of a stable marriage (Fowhand v. Piper, 611 So.2d 1308 (Fla. 1st DCA 1992)), it has also been held that a child of divorce (and presumably a child born out of wedlock) is entitled to no greater rights than the child of a stable marriage. Grapin v. Grapin, 450 So.2d 853 (Fla.1984).
Surely the Miller majority is not suggesting that a child of a stable marriage can insist on the highest standard of living that the parents can afford. This would prevent the family from saving, investing or donating any of its wealth. The Miller majority very likely did not intend to enable a child to sue his parents to send him to private school or to pay for expensive extracurricular activities. This would be inconsistent with the recognized rule that a child does not have the right even to be sent to college. Grapin v. Grapin, 450 So.2d 853 (Fla.1984); Arce v. Arce, 566 So.2d 1308 (Fla. 3d DCA 1990); *771 Leaird v. Leaird, 540 So.2d 243 (Fla. 4th DCA 1989). To hold, therefore, that a child of divorce or a child born out of wedlock has these rights unconstitutionally discriminates against the divorced parent or the parent of a child born out of wedlock by imposing obligations not imposed on married parents.
I construe Miller as holding merely that all children — of divorce, born out of wedlock or of a stable marriage — are entitled to be supported in accordance with the standard of living enjoyed by the parents (if married) or the parent required to pay support (in divorce or paternity actions).
Usually, of course, the standard of living will increase as the income of the parents or paying parent increases. But not necessarily. And even if it does in any particular ease, the support obligation should not necessarily increase at the same rate as the standard of living — or the child might well be able to insist on “a chauffeured limousine” that Justice Grimes indicates is not required. Nothing in Miller suggests that any parent should have to pay in excess of 5% of his or her income over $100,800 as child support unless there are extraordinary circumstances requiring such award. After all, even 5% of such excess can produce a very high standard of living.
Further, Justice Grimes recognized that the principles of the statutory guidelines are applicable even as the income increases. See Miller at 438, n. 3. Although the guidelines require a greater amount of support as the income increases, the rate of increase diminishes as the income increases. This principle, also, should not be overlooked.
On remand, the court should consider the fact that the father, by voluntarily paying $1,500 per month, created a standard of living which exceeds the support indicated by the mere extension of the table and may be estopped from asserting a lesser amount at this time.

. Hinshelwood v. Hinshelwood, 564 So.2d 141, 141 (Fla. 5th DCA 1990) (Sharp, W., J., concurring specially). See also Ombres v. Ombres, 564 So.2d 1103 (Fla. 4th DCA 1990), in which the court held that the guidelines concept of the parents' sharing the support obligation based on the respective percentages of their combined net income should apply also to those cases in which the income exceeds the guidelines table.

. The percentage of income to support at $50,-000 for one child under the 1989 table (and the present table) was 13 percent. This percentage is continued under the present table until the income reaches $54,000 and then is reduced to 10 percent. The overall rate of income to support for the maximum payer under the present table is 13.6 percent. The father in this case was required to pay 23.7 percent of his total income without any explanation of why he was treated differently. Discretion cannot be permitted to mask discrimination.

. It was also made prior to discovering the amendments to section 61.30. In any event, the amendment is inapplicable to this cause.