DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DMYANT SINGH SANGHA,**
Appellant,

v.

**KELLY DIANE RIEDEL,**
Appellee.

Nos. 4D2025-0018 and 4D2025-1847

[June 3, 2026]

Consolidated appeals of nonfinal orders from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James Laird Martz, II, Judge; L.T. Case No. 502023DR007796XXXXSB.

John Granville Crabtree, Charles Morris Auslander, and Brian Carson Tackenberg of Crabtree Auslander & Tackenberg, Key Biscayne, for appellant.

Nancy W. Gregoire Stamper of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Joel Michael Weissman of Joel M. Weissman, P.A., West Palm Beach, for appellee.

CONNER, J.

In this dissolution of marriage proceeding, our decision rests upon the trial court's unique factual findings for granting temporary relief. We conclude competent, substantial evidence supports the trial court's factual findings and conclusion that this case presents unique facts. We note that the appellate review gives broader discretion for temporary relief rulings than awards of alimony and child support in final judgments. *Coviello v. Coviello*, 89 So. 3d 1116, 1117 (Fla. 4th DCA 2012) ("It is a very basic appellate truism that temporary relief awards are among the areas where trial judges have the very broadest discretion, which appellate courts are very reluctant to interfere with except under the most compelling of circumstances." (quoting *Pedraja v. Garcia*, 667 So. 2d 461, 462 (Fla. 4th DCA 1996))). We make no comment as to whether the same evidence at the final hearing in this case will support the same factual findings used to grant temporary support.

Husband and Wife are Canadian citizens currently residing in Florida who decided to dissolve their marriage here. Husband appeals the order awarding Wife temporary alimony, child support, attorneys' fees and costs, and requiring Husband to maintain his visa status. Husband raises six issues on appeal. We affirm without discussion all the trial court's temporary relief rulings except the rulings awarding lump sum child support and costs for Wife's attorney to obtain legal research services.

This case's facts are unique in that Husband has accumulated very substantial wealth with a past record of earning several hundred thousand to one million dollars of income per year. The trial court's order makes a specific finding that Husband has a gross annual income of $1,000,000 and a specific statement that Husband "[has] the ability [to] demonstrate whatever income, or lack there of [sic], that he [decides is] apropos for these proceedings." The trial court also found that Husband routinely paid the top officers of the business enterprises which Husband owns and controls extremely large salaries and bonuses, while significantly decreasing the income paid directly to Husband after he separated from Wife. The trial court further found that Husband has created an intricate structure of interrelated business enterprises which he owns and controls, directly or indirectly, in a manner that flows most of the wealth earned to a family trust that he created. The family trust is unique in that it was intentionally designed by Husband to benefit future generations of Husband's progeny, rather than to benefit Wife and their current minor children. The trial court further found that Husband's intention in structuring his various business entities and his family trust was "to effectively exclude the [Wife] from the significant wealth amassed during the marriage." The written order makes clear the trial court awarded lump sums, instead of monthly amounts, of temporary alimony and child support over a period of eighteen months "[t]o assure the sums Ordered are paid timely, and to alleviate any applications for contempt."

The temporary relief order under review made four monetary awards: (1) a lump sum amount as temporary alimony to cover eighteen months; (2) a lump sum amount as temporary child support to cover eighteen months; (3) an undifferentiated lump sum amount of temporary alimony and child support to cover eighteen months; and (4) an award of temporary attorneys' fees and costs. The separate specific lump sums of alimony and child support were calculated by determining Husband's ability to pay a specific monthly sum which was multiplied by eighteen. We also note that the lump sum award of unallocated alimony and child support contained a list of expenses that were clearly meant to provide additional support for the children, and the order gave Wife notice that how the undifferentiated award was spent would be addressed at the final hearing.

2

We address the specific separate lump sum award of child support separately from the lump sum of undifferentiated alimony and child support.

*Specific Separate Lump Sum of Temporary Child Support*

As we held in *Masnev v. Masnev*, 253 So. 3d 638, 639 (Fla. 4th DCA 2018), the trial court erred in awarding lump sum child support "because no statutory or precedential authority allows for such a lump sum child support award." As *Masnev* states:

> If the Florida Legislature intended to permit a lump sum child support award, then perhaps the Legislature would have included such a provision within the child support provisions of section 61.30, Florida Statutes (2016), as it did within the alimony provisions of section 61.08(1), Florida Statutes (2016): "In any award of alimony, the court may order periodic payments or payments in lump sum or both."

*Id.* We therefore reverse the trial court's specific lump sum temporary child support award which was expressly designated as child support alone. We remand for the trial court to convert the specific lump sum child support award to a monthly payment of child support using the child support guidelines.

*Lump Sum of Undifferentiated Temporary Alimony and Child Support*

As noted, in addition to the separate specific amounts of temporary alimony and child support, the trial court also awarded another lump sum amount of undifferentiated alimony and child support combined. We affirm the undifferentiated lump sum award of alimony and child support for two reasons.

First, the child support statute, section 61.30, Florida Statutes (2023), provides:

> (1)(a) The child support guideline amount as determined by this section presumptively establishes the amount the trier of fact must order as child support for a minor child . . . in an initial proceeding for such support . . . . The trier of fact may order payment of child support which varies, plus or minus 5 percent, from the guideline amount, after considering all relevant factors, including the needs of the child or children,

3

age, underlined(station in life, standard of living, and the financial status and ability of each parent).  The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding explaining why ordering payment of such guideline amount would be underlined(unjust or inappropriate).

§ 61.30(1)(a), Fla. Stat. (2023) (emphasis added).

Section 61.30 further provides:

(11)(a) The court may adjust the total minimum child support award, or either or both parents' share of the total minimum child support award, based upon the following deviation factors:

. . .

7. Total available assets of the obligee, obligor, and the child.

. . .

11. Any other adjustment that is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt. . . .

§§ 61.30(11)(a)7. & 11., Fla. Stat. (2023) (emphasis added).

Regarding section 61.30, the Florida Supreme Court has said:

We find that the schedule for determining the amount of child support, presumed to be the amount a trial judge awards under section 61.30(6), is clearly rebuttable.  The trial court is given the specific authority to order payment of child support which varies more than five percent from the schedule upon a written finding or specific finding on the record explaining why ordering payment of such guideline amount would be unjust or inappropriate.  § 61.30(1)(a), Fla. Stat. (1993).  Furthermore, in determining child support, the trial court is to consider section 61.30(11)(k),[1] Florida Statutes (1993), which allows for an equitable adjustment of the

---

[1] Section 61.30(11)(k), Florida Statutes (1993) is currently renumbered as section 61.30(11)(a)11., Florida Statutes (2023).

4

> minimum child support obligation based upon the facts and circumstances of a particular case.

*Finley v. Scott*, 707 So. 2d 1112, 1116 (Fla. 1998) (emphasis added) (footnote omitted). Additionally, the Court said that "the statutory guidelines expressly contemplate the exercise of judicial discretion and authority by allowing modification of guideline amounts found to be unjust or inappropriate." *Id.* Finally, the Supreme Court noted that in 1994, the legislature amended section 61.30(1)(a) to direct "[t]he trier of fact, after considering all relevant factors including the needs of the child or children, age, station in life, standard of living, and the financial status and ability of each parent" in determining that a deviation from the guideline amount is appropriate. *Id.* (citation modified) (emphasis added).

In addition to the grant of discretion to trial courts by the legislature regarding child support, the Florida Supreme Court has recognized that in marriage dissolution proceedings, the trial court as a general proposition has broad discretion to accomplish equity. In *Canakaris v. Canakaris*, 382 So. 2d 1197 (Fla. 1980) our Supreme Court made clear:

> Dissolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support. The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.

*Id.* at 1202 (emphasis added).

Six years later, relying in part on *Canakaris*, the Florida Supreme Court in *Pastore v. Pastore*, 497 So. 2d 635, 637 (Fla. 1986), approved an "unallocated child support and alimony" award in the form of the husband being ordered to pay the monthly house payments, taxes, and insurance. The Court said:

> An examination of the circumstances of the case at bar well supports the trial court's departure from the general rule. As

emphasized in *Canakaris*, rules should not be interpreted as hard and fast when to do so will defeat the purposes of equity.

. . .

This Court has continued to honor the broad discretionary authority necessary to do equity between the parties.

*Id.* at 637 (citations omitted) (citation modified).

As noted above, the trial court made a separate lump sum award of undifferentiated alimony and child support with a requirement that, from the undifferentiated amount, Wife is to pay a list of expenses as additional financial support for the children, as well as herself.

The Florida Supreme Court in *Tronconi v. Tronconi*, 466 So. 2d 203, 205 (Fla. 1985), said: "'Justification' is a key operative word in awarding lump-sum alimony." "Justification" is likewise a key operative word for an undifferentiated lump sum award of alimony and child support. We conclude from our review of the record that in making the undifferentiated award, the trial court used available information to achieve equity between the spouses for the benefit of the children and provided a written "justification" for the undifferentiated lump sum award of alimony and child support.

Second, we affirm the undifferentiated combined lump sum award because the Florida Supreme Court observed in *Miller v. Schou*, 616 So. 2d 436, 438 (Fla. 1993), that "the need of the child is only one of several factors to be considered in determining an appropriate amount of support." In *Schou*, the Supreme Court approved a statement by the Third District in *Bedell v. Bedell*, 561 So. 2d 1179, 1182 (Fla. 3d DCA 1989), *quashed in part on other grounds*, 583 So. 2d 1005 (Fla. 1991), that "<u>a minor child has every right to share in the good fortune of his or her parents</u>, even after their divorce, given the minor child's general entitlement to the bounty of his or her parents and the fact that the parent-child relationship continues notwithstanding the divorce." *Schou*, 616 So. 2d at 437 (emphasis added). The Court went on to say that "that the need of the child [as determined by the child support guidelines] is only one of several factors to be considered in determining an appropriate amount of support." *Id.* at 438. The Court then observed:

> As a practical matter, it is impossible to believe that any court would award the same amount of child support where the paying parent is a multimillionaire as it would where the

6

paying parent makes a modest living. While technically the child's basic survival needs would be the same in each case, the determination of "need" in awarding child support takes into account more than just the basic necessities of survival.

*Id.* (citing *Smith v. Smith*, 474 So. 2d 1212, 1213 (Fla. 2d DCA 1985)). The Court also rejected Schou's argument

that because there is an upper limit to the amount of support outlined in the guidelines a child's needs are finite and the statute sets out the point at which every child's needs are satisfied. Nothing in the statute or case law suggests that the statute lists the maximum amount of support which could be awarded no matter what the parents' income or financial ability.

*Id.* at 438 n.3. But the Court noted that "[t]he child is only entitled to share in the <u>good fortune of his [or her] parent</u> consistent with an appropriate lifestyle." *Id.* at 439 (emphasis added); *see also Asrani v. Asrani*, 591 So. 2d 283, 284 (Fla. 4th DCA 1991) (affirming an upward modification of child support after the father obtained several millions of dollars from a settlement, reasoning that "[t]he child is entitled to share the good fortune of both parents" (citing *Smith*, 474 So. 2d at 1213)).

The dissent raises a substantial concern that warrants a response. The dissent is correct that on multiple occasions, citing multiple cases, we have reversed undifferentiated support awards and required alimony awards and child support awards to be separately stated. The general rule exists for sound reasons. Where support is not allocated between alimony and child support, meaningful appellate review may be impaired because the reviewing court cannot determine whether the trial court complied with the child-support guidelines or made the findings necessary to justify a deviation. *Shaw v. Shaw*, 337 So. 3d 61, 63 (Fla. 4th DCA 2022); *Blum v. Blum*, 769 So. 2d 1142, 1143 (Fla. 4th DCA 2000). The dissent fairly identifies that concern and correctly observes that we have repeatedly reversed undifferentiated awards on that basis in routine cases. Unfortunately, neither Husband nor the dissent has cited a case with analogous facts as controlling authority rendering this particular award impermissible.

We stress that this case has unusual facts as found by the trial court and supported by competent, substantial evidence. Most importantly, the cases cited by the dissent involved orders in which the trial court made

7

only an undifferentiated support award, leaving no identifiable child support determination to review. That is not what occurred here.

Here, the trial court first calculated and awarded a separate child-support amount using a monthly figure derived from the child-support guidelines. The trial court then imposed an additional temporary child support award in an undifferentiated amount as part of a broader equitable temporary-relief scheme. That the separately designated lump-sum child-support award was procedurally improper under *Masnev*—and must therefore be reversed—does not eliminate the significance of the trial court's underlying guidelines analysis as making this case distinguishable from the cases cited by the dissent. The trial court did what the cases cited by the dissent require as a threshold matter: it performed the section 61.30 analysis and fixed a guidelines-based child support amount. The additional undifferentiated award was not a substitute for that analysis; it was <u>an **additional** temporary equitable measure</u> imposed **after** the guidelines analysis had been completed. That distinction is material and places this case outside the reach of the authorities on which the dissent principally relies.

The dissent's reasoning disregards the trial court's finding that Husband intentionally structured his business entities and the family trust to minimize the income appearing directly attributable to Husband while protecting access to the wealth generated and accumulated by the entities and the trust and to make contempt proceedings and enforcement of temporary support difficult. The dissent also does not address the trial court's equitable powers under section 61.30.

The standard of review for temporary support is not whether another judge (or the dissent) might have fashioned a narrower remedy, nor whether the same award would be sustainable after final hearing on a fully developed equitable distribution record. Rather, the standard of review is whether the trial court, confronted with a spouse found to exercise unusual control over the form and presentation of his income and assets, acted outside the broad range of discretion afforded to temporary-relief rulings in fashioning a limited-duration support order to preserve equity pending final adjudication. *Coviello* answers that question in the negative, absent the most compelling circumstances. This record does not present such circumstances.

For two reasons we are not persuaded by the dissent's separation of powers analysis and reliance on the First District's recent opinions in *Guimbellot v. Guimbellot*, 352 So. 3d 950 (Fla. 1st DCA 2022), and *Iarussi v. Iarussi*, 353 So. 3d 24 (Fla. 1st DCA 2022). First, the dissent cites those

cases discussing the separation of powers issue in the context of retroactive alimony, and neither case discusses an award of undifferentiated temporary alimony and child support. Second, neither case discusses equity concepts or the equitable powers of the trial court in child support proceedings, as specifically authorized by the legislature in section 61.30. The dissent also does not acknowledge that the majority opinion and the trial court have not violated the separation of powers doctrine when the legislature has explicitly granted authority to the courts to make these types of decisions "to achieve an equitable result." § 61.30(11)(a)11., Fla. Stat. (2023).

While the dissent's concerns have some degree of merit for consideration, those concerns do not establish reversible error under either the governing law, the trial court's factual findings, or the deferential standard applicable to temporary relief awards. On this record, the dissent's objections do not justify setting aside the limited-duration equitable remedy which the trial court fashioned pending final adjudication regarding the temporary lump sum undifferentiated award of alimony and child support.

*Legal Research Costs*

We determine, however, that the award of legal research costs was error. Although we have previously said "[t]he 'suit money' authorized in dissolution proceedings under section 61.16, Florida Statutes, contemplates a broader range of expenses than the costs which are ordinarily taxable in other civil cases," *Hahamovitch v. Hahamovitch*, 133 So. 3d 1062, 1063 (Fla. 4th DCA 2014) (citation omitted), we have specifically reversed cost awards for legal research in dissolution cases. *Griffith v. Griffith*, 941 So. 2d 1285, 1286 (Fla. 4th DCA 2006) (reversing a cost award for Westlaw legal research expenses); *see also Bolton v. Bolton*, 412 So. 2d 72, 73 (Fla. 2d DCA 1982) (counsel's office expenses are not recoverable costs in dissolution proceeding). Thus, the trial court erred in awarding legal research costs to Wife in this case.

**Conclusion**

We affirm all the trial court's temporary relief rulings, including the undifferentiated lump sum alimony and child support award, but reverse the grant of a specific amount of lump sum child support and the award of legal research costs as temporary suit money for Wife. We remand for the trial court to strike the award of legal research costs and to revise the temporary order to convert the specific lump sum award of child support to monthly child support payments. Because we are reviewing a nonfinal

order, the trial court has the discretion to conduct further hearings and receive additional evidence if needed to determine the monthly child support amount.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

KLINGENSMITH, J., concurs.
LOTT, J., concurs in part and dissents with separate opinion.

LOTT, J., concurring in part and dissenting in part.

I agree with much of the majority's decision in this case, including most of the issues on which it chooses to summarily affirm.

But I cannot join the decision to affirm an award of undifferentiated support.[2]  On that point, I dissent.  Undifferentiated support—support which purports to be unspecified sums of alimony and child support—is not a thing.

Such an award violates our precedent, the child support statute,[3] and the separation of powers, which forbids courts from legislating new forms of relief.

\*        \*        \*

By its very nature, an "undifferentiated" award of child support and alimony is improper.  This is clear from the language of the statute authorizing the award of temporary child support, which requires that "[t]he child support guideline amount as determined by this section presumptively establishes the amount the trier of fact must order as child support for a minor child," and that "[t]he trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding explaining why ordering payment of such guideline amount would be unjust or inappropriate." § 61.30, Fla. Stat. (2023).  An undifferentiated award thus necessarily violates the statute, as no factual finding can justify why the guideline

---

[2] The trial court described the undifferentiated support it awarded as money "to supply the Respondent with dollars to meet other needs in addition to 'guideline child support' and alimony awarded, so as to assure the Respondent and children have a standard of living which represented a semblance of their lifestyle in advance of the Petition for Dissolution of Marriage."

[3] § 61.30, Fla. Stat. (2023).

amount is unjust or inappropriate vis-à-vis the (unknown) amount awarded.

We have repeatedly held as much. *See Blum v. Blum*, 769 So. 2d 1142, 1143 (Fla. 4th DCA 2000) ("[T]he court failed to identify which share of the award was for child support and which was intended to be alimony. Thus, we cannot determine whether the temporary child support portion of the award is appropriate in relation to the child support guidelines."); *Van Maerssen v. Gerdts*, 213 So. 3d 952, 953 (Fla. 4th DCA 2017) ("We further find that the trial court abused its discretion in awarding the wife 'undifferentiated' spousal and child support instead of calculating them separately."); *Greenhouse v. Greenhouse*, 913 So. 2d 1201 (Fla. 4th DCA 2005) ("[I]n making the undifferentiated award, the trial court did not identify 'which share of the award was for child support and which was intended to be alimony.'" (citations omitted)); *Jooste v. Jooste*, 273 So. 3d 6, 8 (Fla. 4th DCA 2019) ("[T]he court needed to identify the amount of the support award that was alimony and the amount that was child support."); *Shaw v. Shaw*, 337 So. 3d 61, 63 (Fla. 4th DCA 2022) ("We have held it error for a trial court to award undifferentiated spousal and child support rather than calculating the amounts separately."); *accord Nilsen v. Nilsen*, 63 So. 3d 850, 851 (Fla. 1st DCA 2011) ("A support award that fails to differentiate between child support and alimony is improper because it renders the appellate court unable to determine whether the trial court applied the statutory child support guidelines set forth in section 61.30.").

The majority disregards the statute and our reasoned precedent, relying instead on *antient* precedent applying nonexistent or unrecognizable versions of the statute. *E.g., Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980) ("The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose. . . ."); *Pastore v. Pastore*, 497 So. 2d 635, 637 (Fla. 1986) ("[R]ules should not be interpreted as hard and fast when to do so will defeat the purposes of equity. . . . This Court has continued to honor the broad discretionary authority necessary to do equity between the parties."); *Tronconi v. Tronconi*, 466 So. 2d 203, 205 (Fla. 1985) ("'Justification' is a key operative word in awarding lump-sum alimony.").

Section 61.30 did not exist before 1987. Its original form was much more discretionary than the current version, and did not even apply to high-income families.[4] Changes in 1989 required trial judges to use the

---

[4] Section 61.30(1), Florida Statutes (1987), provided: "The guidelines set forth in this section may be used by the trier of fact in establishing temporary and permanent child support awards in initial or modification proceedings, whether

guidelines and explain why they are deviating from the guidelines by more than 5 percent and making "undifferentiated support" flatly unavailable, but those changes applied only to low-income families.  § 61.30, Fla. Stat. (1989).  The guidelines did not become applicable to all families until 1993.  § 61.30, Fla. Stat. (1993).

The majority meets the failure to comply with the statute with apologetics.  It pivots instead to the notion that the trial court *did* apply the guidelines and awarded child support, and simply ordered *additional* undifferentiated support that it calls an "additional temporary equitable measure."

This is utterly uncompelling.

If the award includes child support, then it necessarily violates section 61.30.

If the award does not include child support, but is its own creature of "undifferentiated support," then that award is fashioned out of whole cloth—it is illegal and ultra vires.  An award in a dissolution case with no statutory basis is "a creation of the courts prohibited by the separation of powers set forth in article II, section 3 of the Florida Constitution." *Guimbellot v. Guimbellot*, 352 So. 3d 950, 953 (Fla. 1st DCA 2022) (cleaned up); *see also Iarussi v. Iarussi*, 353 So. 3d 75, 84 (Fla. 1st DCA 2022) (Long, J., concurring) ("Article II, section 3 of the Florida Constitution states '[t]he powers of the state government shall be divided into legislative, executive and judicial branches.  No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.'  We are not free to craft new bases for alimony not authorized by law.").

The majority does correctly note that the child support statute, including sections 61.30(11)(a)7. and 61.30(11)(a)11., and corresponding caselaw, allow for upward deviation from the guidelines based on resources available to the obligor-parent.  *See Miller v. Schou*, 616 So. 2d 436, 438 (Fla. 1993) ("[T]he need of the child is only one of several factors

---

arising under chapter 61, Florida Statutes, or otherwise; however, the guidelines shall not be used to provide the basis for proving a substantial change in circumstances upon which a modification of an existing order may be granted.  The guidelines shall not apply to parents with a combined net income in excess of $50,000 per year and such persons shall be subject to child support orders based upon individual case by case review."

to be considered in determining an appropriate amount of support."); *Finley v. Scott*, 707 So. 2d 1112, 1116 (Fla. 1998) ("The trial court is given the specific authority to order payment of child support which varies more than five percent from the schedule upon a written finding or specific finding on the record explaining why ordering payment of such guideline amount would be unjust or inappropriate.").

But this is not a question of *could.* This is a question of *did.*

The trial court *could* award child support that deviates more than 5 percent above the guidelines "upon a written finding explaining why ordering payment of such guideline amount would be unjust or inappropriate," after considering a variety of factors including the resources of the obligor-parent. §§ 61.30(1)(a), 61.30(11), Fla. Stat. (2023). The trial court *did not* do that; it awarded a guidelines amount of child support plus an amount of "undifferentiated support."[5]

Indeed, a court could never meet the statutory requirements for written findings in the context of an undifferentiated award, precisely because the award is not differentiated. That's why our precedent has repeatedly rejected those awards. This case presents no exception.

In sum, the trial court erred by awarding impermissible undifferentiated support. Section 61.30 simply does not permit child support to be lumped in together with alimony without differentiation. The majority disregards the statute and our precedent in countenancing this award.

\*    \*    \*

***Not final until disposition of timely-filed motion for rehearing.***

---

[5] Perhaps worse yet, it calculated this award based neither on the need of the child nor the parent's ability to pay, but on the fact that that amount was the residual value after subtracting awarded alimony, child support, and professional fees from the liquid assets that the court was able to identify.

13